UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDHILLS GLOBAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> LAWRENCE GARAFOLA, individual, and FACTS TECHNOLOGY LLC, a New Jersey limited liability company, <br><br> Defendants. | Civil Action No. 3:19-cv-20669 |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

BRESSLER, AMERY & ROSS, P.C.
John D. Miller, III
Justin E. Condit
325 Columbia Turnpike
Florham Park, NJ 07932
(973) 514-1200
(973) 514-1660 (facsimile)

and

KOLEY JESSEN PC, LLO
Margaret C. Hershiser *(pro hac vice* motion to be filed)
Patrice D. Ott *(pro hac vice* to be filed)
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9500 (facsimile)

*Attorneys for Plaintiff Sandhills Global, Inc.*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT. ...................................................................................................1

II. STATEMENT OF FACTS. .........................................................................................................2

III. ARGUMENT. ............................................................................................................................2

    A. Defendants Cannot Contest that Sandhills Has Shown a Likelihood of Success on the Merits of Its Claims. ...........................................................................................................2

    B. Defendants Fail to Refute that Sandhills Is Suffering and Will Continue to Suffer Irreparable Harm Absent Injunctive Relief. ...........................................................................12

    C. Defendants Have Failed to Show that the Balance of Harm Weighs in Their Favor or that Injunctive Relief Will Harm the Public Interest. ..............................................................14

    D. Defendants Fail to Rebut that They Must Be Ordered to Return Sandhills' Confidential and Proprietary Information. ................................................................................15

IV. CONCLUSION. .......................................................................................................................15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ADP, LLC v. Jacobs*,
   2015 U.S. Dist. LEXIS 103207 (D.N.J. Aug. 5, 2015) ................................................................. 13

*ADP, LLC v. Lynch*,
   2016 U.S. Dist. LEXIS 85636 (D.N.J. June 30, 2016) ............................................................. 7, 13

*ADP, LLC v. Trueira*,
   2018 U.S. Dist. LEXIS 133446 (D.N.J. Aug. 2, 2018) ................................................................. 13

*Chemetall US Inc. v. LaFlamme*,
   2016 U.S. Dist. LEXIS 29644 (D.N.J. Mar. 8, 2016) .................................................................. 13

*Healthcare Servs. Grp. v. Fay*,
   597 F. App'x 102 (3d Cir. 2015) .................................................................................................. 13

*Heartland Payment Sys., LLC v. Volrath*,
   2017 U.S. Dist. LEXIS 213648 (D.N.J. Dec. 30, 2017), *aff'd*, 762 F. App'x 95
   (3d Cir. 2019)..................................................................................................................... 2, 13, 14

*Laidlaw, Inc. v. Student Transp. of Am.*,
   20 F. Supp. 2d 727 (D.N.J. 1998) .................................................................................................. 7

*Saturn Wireless Consulting, LLC v. Aversa*,
   2017 U.S. Dist. LEXIS 65371 (D.N.J. Apr. 26, 2017) ................................................................ 13

*Trico Equip., Inc. v. Manor*,
   2009 U.S. Dist. LEXIS 50524 (D.N.J. June 13, 2009) ................................................................ 13

**Statutes**

N.J.S.A. 56:15-2, 3 ............................................................................................................................ 12

**Rules**

Federal Rules of Civil Procedure Rule 65 ........................................................................................ 15

Local Rule 65.1 ................................................................................................................................. 15

I.       PRELIMINARY STATEMENT.

Defendants Lawrence Garafola ("Garafola") and Facts Technology LLC ("Facts Technology") (collectively, "Defendants") opposition to Plaintiff Sandhills Global, Inc. ("Sandhills") Application for a Temporary Restraining Order ("TRO") wholly ignores the non-competition agreement Garafola entered into with Sandhills that was ancillary to Sandhills' purchase of Garafola's former business, Equipmentfacts, LLC ("Equipmentfacts"), for $1.5 million, less than 17 months ago. (Verified Compl., Ex. B).  Likewise, Defendants' opposition also ignores the two non-solicitation agreements that Garafola entered into with Sandhills. (Verified Compl., Exs. B-C).  The reason Defendants fail to even mention these agreements in their opposition is obvious – they cannot dispute that Garafola has violated these agreements by establishing, owning, and operating Facts Technology (a competing business that provides an online auction solution) and directly soliciting Sandhills' customers.

Rather, in opposition, Defendants have taken the untenable position that Sandhills cannot show any of the requirements for injunctive relief (*i.e.,* likelihood of success on the merits, irreparable harm, balance of harms, and public interest) because Sandhills and Defendants are "not in the same line of business."  This wholesale, unsupported approach to opposing Sandhills' Application is meritless and cannot be a basis for denying Sandhills' Application.  Despite Defendants' attempt to obfuscate the facts in this matter, Facts Technology is directly competing with Sandhills.  Simply put, both Sandhills and Facts Technology are in the online auction business and both provide online auction platforms (through the use of certain software) and online auction services for various industries.  Indeed, Defendants' claim that Facts Technology (or its doing business under the brand "Auctioneer Facts") is only in the business of selling computer software is directly contradicted by Defendants' solicitations to Sandhills' customers, in which they market an "easy-to-use, industry specific, online bidding system that broadcasts auctions from around the world and streams them directly to a bidder's computer," which is the precise language Equipmentfacts has used and continues to use to describe its own business. (***Declaration of Evan Welch***

("***Welch Declaration II***"), ¶¶ 7-8 (and the exhibits referenced therein)[1]. Critically, not once in any of Defendants' solicitations or anywhere on Facts Technology's website do they state that they sell computer software or are in the software licensing business. (*See Id.*, ¶¶ 6, 8 (and the exhibits referenced therein)).

Because Defendants' repeated argument that they are not in the "same line of business" as Sandhills is clearly without merit, Defendants' opposition completely fails to refute that Sandhills is entitled to the requested injunctive relief based on the incontrovertible evidence submitted to the Court and pursuant to prevailing Third Circuit case law. *See Heartland Payment Sys., LLC v. Volrath*, 2017 U.S. Dist. LEXIS 213648 (D.N.J. Dec. 30, 2017), *aff'd*, 762 F. App'x 95 (3d Cir. 2019). Simply repeating without credible, evidentiary support that Sandhills and Defendants are purportedly not in the "same line of business" does not make that statement true. Therefore, Sandhills respectfully requests that the Court grant its Application and enter immediate injunctive relief restraining Defendants' campaign to cause irreparable and incalculable harm to Sandhills.

**II.   STATEMENT OF FACTS.**

The factual background supporting Sandhills' Application is set forth in the Verified Complaint and the supporting Declarations, which are incorporated herein by reference.

**III.   ARGUMENT.**

    **A.   Defendants Cannot Contest that Sandhills Has Shown a Likelihood of Success on the Merits of Its Claims.**

        1.   *Sandhills Is Likely to Succeed on the Merits of Its Breach of Contract Claims Due to Garafola's Breach of His Non-Compete Restrictive Covenants.*

In their opposition, Defendants do not argue that Garafola's non-compete restrictive covenants are in any way unreasonable or unenforceable, thereby conceding their enforceability. Rather, Defendants merely argue that Sandhills cannot succeed on the merits of its breach of contract claims because, in Defendants' unsupported view, they are "not engaged in the in [sic] conduct precluded by the non-competition agreement." Specifically, Defendants appear to contend that Facts Technology does not

---

[1] Attached as Ex. 1 to the Certification of John D. Miller, III submitted in connection with this Reply Brief ("Miller Certif. II").

2

engage in conduct that violates the non-compete restrictive covenant in the Employee Proprietary Information, Inventions and Nonsolicitation Agreement (the "Garafola PMA") that Garafola entered in connection with his employment with Sandhills.  Defendants claim that they have not breached the non-compete provision in the Garafola PMA because Facts Technology allegedly does not provide "an online auction platform or online auction services for the purpose of facilitating the sale of equipment or machinery that is used in the agriculture or construction industries." (Verified Compl., Ex. C).  Notably absent from Defendants' opposition, however, is any argument that Garafola, operating as Facts Technology, has not breached the non-compete restrictive covenant in the Noncompetition, Noninterference and Confidentiality Agreement (the "Restrictive Covenant Agreement"), which Garafola entered into with Sandhills that was ancillary to Sandhills' purchase of Equipmentfacts for $1.5 million. (Verified Compl., Ex. B).

The Restrictive Covenant Agreement provides, in relevant part, that for "a period of five (5) consecutive years from and after the date of this Agreement [July 16, 2018]", Garafola shall not "provide or perform services for the benefit of, manage, operate, or in any way participate in, a business that competes with the Business (as conducted by Purchaser [Sandhills Global Inc.] or its Affiliates." (Verified Compl., Ex. B, Sections 1.a. and 2.a.).  The term "Business" is not defined in the Restrictive Covenant Agreement but is defined in the Asset Purchase Agreement ("APA") and, therefore, the definition of the term Business in the APA is incorporated into to the Restrictive Covenant Agreement by reference. (Verified Compl., Ex. B, Section 1.d. provides: "all other capitalized terms used in this Agreement, but not  otherwise defined in this Agreement, shall have the meanings ascribed to them in the Purchase Agreement.").

The APA defines Business as the Seller-Garafola being "engaged in the business of providing online auction solutions for the heavy equipment, truck, agricultural and related auction industries, including providing industry-specific online bidding systems, websites for virtual attendance at auctions, the 'Auction Facts Monthly' publication, third-party advertisement services and podcast content[.]" (***Welch Declaration II***, ¶ 5).

3

Because Defendants have not addressed in any fashion the Restrictive Covenant Agreement, Defendants have failed to dispute that Sandhills will succeed on the merits of its claim for breach of the Restrictive Covenant Agreement.

          a.      <u>Sandhills and Defendants are direct competitors as they both provide an online auction platform and online auction services.</u>

Contrary to Defendants' baseless claim that they are not engaged in the "same line of business" as Sandhills, Facts Technology is in fact directly competing against Sandhills. In a desperate attempt to distinguish the two businesses to avoid Garafola's agreements, Defendants misrepresent that Sandhills is only in the business of running auctions for agricultural and construction machinery, while Defendants are in the business of selling computer software. Neither of those statements are true. Sandhills is not exclusively in the business of running auctions for agricultural and construction machinery (***Welch Declaration II***, ¶¶ 3, 5, 7, 9); nor are Defendants in the business of solely selling computer software (*See Id,* ¶¶ 6, 8 and 10). Simply put, both Sandhills and Facts Technology provide industry specific online auction systems that enable auctioneers to simulcast live and time onsite auctions to national and international bidders. (*See Id,* ¶¶ 7-12). Sandhills or Facts Technology is paid a fee by the customers that utilize their online auction systems (either in the form of a commission or a fixed rate). (*See Id.*).

Facts Technology does not simply sell computer software as Defendants claim in their opposition. In fact, this false claim is directly contradicted by Facts Technology's public website, which states that "Facts Technology has been providing Auctioneers with cutting edge technology, support and services for decades" and has "set up an easy to use, industry specific online bidding system that broadcasts auctions from locations around the world and streams directly to a bidder's computer or mobile device." (***Welch Declaration II***, ¶ 6). Although Defendants appear to be claiming that Facts Technology does not provide online auction services, the company's website expressly states: "Our online auction service benefits both sellers and buyers because our system makes it very simple for high numbers of bidders around the world to attend auctions, resulting in an increase of participants per sale." (*Id.*). Incredibly, despite claiming to be in the business of selling computer software (and thus not in the online auction

business), Facts Technology fails to state anywhere on its website that it sells computer software.

Likewise, Defendants' claim that Auctioneer Facts (a service offered by Facts Technology) is only in the business of selling computer software is equally without merit.  Indeed, the materials sent by Defendants to Sandhills' customers confirm that "Auctioneer Facts is an online broadcaster of live webcast and timed auctions" and "ensures smooth integration of its ***platform*** with [the customers'] auction management software." (Ex. A, pp. 3 and 8, attached to the **Dimick Declaration**[2]).  Further, the solicitation materials make clear that Auctioneer Facts does not merely sell computer software, but provides "online broadcasting and services as well as real time video and audio services," search engine optimization services, training, and "additional services . . . upon request." (**Dimick Declaration**, Ex. A, pp. 6, 9 and 13).  Any claim that Auctioneer Facts merely sells computer software is frivolous.

In layman's terms, Facts Technology provides an online auction system and online auction solutions to customers so that they can sell various types of equipment through online auctions, which is precisely Sandhills' "line of business."  Indeed, several of Sandhills' customers have provided Declarations to this Court affirming that, based on the solicitations they received from Defendants, Facts Technology (d/b/a Auctioneer Facts and other brands) is directly competing against Sandhills. (*See* **Dimick, Gombiski, and Hilpipre Declarations**[3]).  Therefore, Defendants argument that they are somehow not competing against Sandhills and are not in the same "line of business" is entirely without merit.

        b.     <u>Garafola, as Facts Technology, breached his non-compete restrictive covenants with Sandhills.</u>

Garafola entered into two non-compete restrictive covenants with Sandhills:  one that was ancillary to Sandhills' purchase of Equipmentfacts for $1.5 million (the Restrictive Covenant Agreement referenced, *supra*) and another that was in consideration for his employment with Sandhills (the Garafola PMA, referenced *supra*). (*See* Verified Compl., Exs. B-C).  Defendants' opposition wholly ignores the

---

[2] Submitted in connection with the Moving Brief as Ex. 1 to the Certification of John D. Miller, III ("Miller Certif. I").
[3] Attached to Miller Certif. I as Exs. 1, 2 and 5, respectively.

Restrictive Covenant Agreement that was ancillary to the purchase of Equipmentfacts because they cannot dispute that their conduct is directly violating that agreement.

                i.      The non-compete restrictive covenant in the Restrictive Covenant Agreement.

Ancillary to the sale of Equipmentfacts, Garafola agreed not to compete against Sandhills for a period of five consecutive years from and after July 16, 2018 – the date of the Restrictive Covenant Agreement. (*See* Verified Compl., Ex. B). Specifically, Garafola agreed that, during the five year period, he would not, directly or indirectly, "provide or perform services for the benefit of, manage, operate, or in any way participate in, a business that competes with the Business (as conducted by [Sandhills] or its Affiliates), either on [Garafola's] own behalf or on the behalf of any other person." (Verified Compl., Ex.). Also, as part of this agreement, Garafola agreed to not "acquire a financial interest in, own or control any business that competes with the Business . . . ." (Verified Compl., Ex. B). Importantly, the term "Business" as referred to in the Restrictive Covenant Agreement is defined as "providing online auction solutions for the heavy equipment, truck, agriculture and related auction industries, including providing industry-specific online bidding systems, websites for virtual attendance at auctions, the 'Auction Facts Monthly' publication, third-party advertisement and podcast content." (***Welch Declaration II***, ¶ 5). The term "Business" in the Restrictive Covenant Agreement is in no way limited to only online auction solutions pertaining to agriculture and construction, as Defendants suggest in their opposition.

Defendants fail to even attempt to argue that Garafola has not breached the Restrictive Covenant Agreement by establishing, owning, and operating Facts Technology and all of its various brands. There can be no legitimate dispute that Garafola, as Facts Technology, is directly competing with Sandhills' business, which is expressly defined as, amongst other things, providing "industry-specific online bidding systems" and "websites for virtual attendance at auctions." (***Welch Declaration II***, ¶¶ 4-13). According to Facts Technology's own website, it offers "an easy to use, **industry specific online bidding system** that broadcasts auctions from locations around the world and streams directly to a bidder's computer or mobile device." (*Id.,* ¶¶ 6, 8 (and Exs. referenced therein)). Facts Technology's website further states

that "[w]hen bidders can't make it to the auction site, they simply login to **attend the auction virtually**." (*Id.* (emphasis added)). As such, Facts Technology provides "industry-specific online bidding systems" and "websites for virtual attendance at auctions," which is exactly the business Garafola agreed not to compete with for five years after entering into the Restrictive Covenant Agreement.

If the above facts alone are not enough to demonstrate that Facts Technology and Sandhills are direct competitors (which they clearly are), Sandhills has already presented evidence that Defendants are directly competing with Sandhills by providing online auction services for one of Sandhills' long-standing customers. As demonstrated above, both Sandhills and Facts Technology provide an online auction systems and online auction services to customers throughout various industries. For example, Facts Technology operates a brand called OilfieldFacts, which is directly competing with Sandhills' Equipmentfacts brand. (***Welch Declaration II***, ¶¶ 16-23). Indeed, Facts Technology, through its OilfieldFacts brand, is already providing online auction services for Permian International Energy Services ("Permian"), one of Sandhills' long-standing customers. This alone is a direct violation of the non-competition clause in the Restrictive Covenant Agreement. (*See Id.*) Further, Defendants' Auctioneer Facts brand appears to be providing an online auction platform and online auction solutions across all industries, and has been directly soliciting Sandhills' customers. (*See **Dimick, Gombiski, Welch and Hilpipre Declarations**[4]*).

In addition to failing to dispute that Garafola has breached the non-competition clause in the Restrictive Covenant Agreement, Defendants also do not dispute that restrictive covenants that are ancillary to the sale of a business for $1.5 million should be freely enforceable. *See Laidlaw, Inc. v. Student Transp. of Am.*, 20 F. Supp. 2d 727, 754 (D.N.J. 1998). Nor do Defendants provide any grounds for not enforcing the non-compete restrictive covenants. As such, the Court must find that Sandhills has shown a likelihood of success on the merits of it claims for breach of the non-competition agreement in the Restrictive Covenant Agreement. *See ADP, LLC v. Lynch*, 2016 U.S. Dist. LEXIS 85636, at *21 (D.N.J.

---

[4] Attached to Miller Certif. I as Exs. 1, 2, 3 and 5, respectively.

June 30, 2016) (finding that a plaintiff establishes a likelihood of success where the defendant undeniably breached the restrictive covenants) (citing *Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc.*, 931 F. Supp. 377, 385 (E.D. Pa. 1996)).

                ii.      The non-compete restrictive covenant in the Garafola PMA.

In addition to agreeing to the five year non-compete in the Restrictive Covenant Agreement, Garafola also entered into another non-compete agreement in consideration for his employment with Sandhills. Pursuant to the non-compete restrictive covenant in the Garafola PMA, Garafola agreed that, for eighteen months after his employment with Sandhills ends for any reason, including involuntary termination, he would not "be involved as an owner, partner, shareholder, joint venturer, director, employee, agent or independent contractor of any business engaged in . . . providing online auction platform or online auction services for the purpose of facilitating the sale of equipment or machinery that is used in the agricultural or construction industries in a manner that competes with [Sandhills]." (Verified Compl., Ex. C).

In opposition to Sandhills' Application, Defendants argue that Facts Technology has not violated the Garafola PMA non-compete restrictive covenant because it is selling computer software and is not hosting auctions for agricultural and construction machinery. However, as described above, Facts Technology's Auctioneer Facts brand does not merely sell computer software as Defendants allege in their opposition. According to Facts Technology's own materials that were sent to Sandhills' customers, Auctioneer Facts provides an online auction solution that can be used by any auctioneer, including those selling equipment and machinery that is used in the agricultural or construction industries. Indeed, Facts Technology has been directly soliciting Sandhills' customers to use Auctioneer Facts, without limiting its services to industries other than agricultural or construction industries.

Thus, it is clear that not only have Defendants violated the non-compete restrictive covenant in the Restrictive Covenant Agreement, but they have also breached the non-competition clause agreed to in the Garafola PMA.

        c.        <u>Defendants do not dispute that Garafola, as Facts Technology, breached his non-solicit restrictive covenants with Sandhills.</u>

Defendants' opposition also utterly fails to dispute that Garafola, as Facts Technology, breached both of his non-solicit restrictive covenants in the Restrictive Covenant Agreement and the Garafola PMA. (Verified Compl., Exs. B-C). Nor do Defendants dispute that the non-solicit restrictive covenants are enforceable. As such, Defendants have conceded both that the non-solicit restrictive covenants are enforceable, and that they breached the agreements through their mass email solicitations to Sandhills' customers.

In the Restrictive Covenant Agreement (which, as noted, was entered into by the parties pursuant to Sandhills' purchase of Equipmentfacts for $1.5 million), Garafola agreed that, for a period of five consecutive years from and after July 16, 2018, he would not solicit any customers, clients, or accounts of Sandhills or encourage any customer, client, or account of Sandhills to sever or alter its relationship with Sandhills. (Verified Compl., Ex. B). Likewise, in the Garafola PMA, Garafola agreed that, for eighteen months after his employment with Sandhills ends for any reason, including involuntary termination, he would not "solicit . . . any customers of [Sandhills], its affiliates and subsidiaries with whom [he] had personal contact and actually did business with in the course of [his] employment with [Sandhills] . . . at any time during the four (4) year period immediately preceding the termination of [his] employment with [Sandhills]." (Verified Compl., Ex. C).

Despite agreeing to these non-solicit restrictive covenants, the record evidence indisputably shows that Defendants directly solicited Sandhills' customers by sending mass email solicitations offering to provide an online auction solutions that is almost identical to Sandhills' business. (*See* Verified Compl., at ¶¶ 52- 55; **Dimick, Gombiski, Essay and Hilpipre Declarations**[5]). In fact, even after agreeing to "not issue ***any communications*** to any client of Sandhills until Your Honor decides on the Plaintiff's emergent application" (CM/ECF No. 6 (emphasis added)), the following morning, Defendants sent out additional email marketing solicitations to Sandhills' customers, several of whom contacted representatives of

---

[5] Attached as Exs. 1, 2, 4 and 5, respectively, to Miller Certif.

9

Sandhills about Defendants' new solicitation email. (***Welch Declaration II***, ¶ 13 (and the Ex. referenced therein)).

Based on the foregoing reasons, the Court must find that Sandhills has a high likelihood of success on the merits of its breach of contract claims against Garafola.

        2.    *Sandhills Has Shown Evidence of Defendants' Tortious Interference and Therefore Is Likely to Succeed on the Merits of Its Tortious Interference Claims.*

Rather than offer any substantive opposition to Sandhills' argument that it is likely to succeed on the merits of its tortious interference claim, Defendants merely state that Sandhills "offers no factual support for its contention that it would likely succeed on the merits with respect to [its tortious interference claim]." This is demonstrably false. Even at this early stage in the litigation, Sandhills has already shown that Garafola and Facts Technology, by and through their unlawful competition and solicitations, have tortiously interfered with Sandhills' business relationships, including, but not limited to, Permian, a long-standing Sandhills customer. (*See* Verified Compl., at ¶¶ 42-55; ***Welch and Essay Declarations***). Not only is this incontrovertible evidence of tortious interference, but it also demonstrates that Defendants breached the "Noninterference" provision in the Restrictive Covenant Agreement, which provides, in relevant part, that Garafola "shall not during the Restrictive Period [five years from July 16, 2018], directly or indirectly . . . encourage, in any way or for any reason, any customer, client, client or account of Purchaser of its Affiliates, to sever or alter the relationship of such customer, client or account with the Purchaser or its Affiliates." (Verified Compl., Ex. B, Section. 5.a.). As such, Defendants' argument that Sandhills has "no factual support" to support its tortious interference claim is unfounded.

        3.    *Sandhills Has Shown Evidence that Defendants Misappropriated Sandhills' Proprietary Information and Therefore Is Likely to Succeed on the Merits of Its Misappropriation of Trade Secrets Claims.*

Just as Defendants failed to offer any substantive opposition to Sandhills' contention that it is likely to succeed on the merits of its tortious interference claim, Defendants assert the same baseless argument in response to Sandhills' claims for misappropriation of trade secrets. Defendants again merely

state that Sandhills "offers no factual support for its contention that it would likely succeed on the merits with respect to [its claim for misappropriation of trade secrets]." This too is demonstrably false.

As asserted in the Verified Compl., Sandhills has evidence that, while Garafola was a Sandhills employee, he transmitted specific proprietary information to his personal Gmail account, including but not limited to, the following documents:

  a. A "Biggest Auctioneers" list that contained specific auctioneer sales and commission figures;

  b. A Top Bidder spreadsheet that contained bidder names with corresponding bidder numbers, bidder rank, and total sales figures;

  c. Equipmentfacts' manuals, documents, templates, welcome emails, and video tutorials on how to manage bidders, set up a remote broadcast, create a timed auction, create invoices, generate reports, upload sale day catalogues, create a live auction;

  d. An Excel spreadsheet entitled "3.0 Distribution Spreadsheet," which contains a list of over forty (40) auction companies; and

  e. A list of Oilfield bidders that contained specific bidder names, contact information, as well as the bidders' Sandhills branded website registration information, including, email addresses and passwords.

(*See* Verified Compl., at ¶ 40). Sandhills also has evidence that, on July 30, 2019, while still a Sandhills employee but shortly before his termination, Garafola accessed a spreadsheet entitled "AllBidpathBiddersExport_4.30_19_revised." (*See* Verified Compl., at ¶ 41). Yet, Sandhills stopped doing business with Bidpath in April 2019, meaning Garafola had no legitimate business purpose for accessing this information as an employee of Sandhills in July 2019. (*See* Verified Compl., at ¶ 41). Further showing his nefarious purpose for accessing this spreadsheet is the fact that, just prior to his termination, Garafola deleted these documents from his work station – attempting to cover his tracks. (*See Id.*).

It cannot be ignored that there is direct evidence that Garafola misappropriated a list of Oilfield bidders from Sandhills (see "e" above) and is now directly competing against Sandhills through Facts Technology's brand called Oilfield Facts and has successfully solicited and is performing online auction services for Permian, a long-standing Sandhills customer. (*See* Verified Compl., at ¶¶ 40-55). At this

11

stage in the litigation, Sandhills has certainly presented sufficient evidence to show a likelihood of success on the merits of its claims for misappropriation of trade secrets.

Nonetheless, Sandhills has also shown evidence that Defendants have solicited and continue to solicit Sandhills' customers, using Sandhills' compilation of business data, in direct violation of his agreements and New Jersey law regarding the misappropriation of trade secrets. *See* N.J.S.A. 56:15-2, 3. Indeed, at least one Sandhills customer has provided a Declaration, which explains that he was concerned about how Garafola was able to contact him and clearly shows that there is absolutely no way that Garafola could have obtained his personal contact information without misappropriating this confidential information from Sandhills. (*See* **Dimick Declaration**). Quite tellingly, Defendants offer absolutely no explanation as to how they were able to obtain Mr. Dimick's personal contact information if not by Garafola misappropriating it from Sandhills.

For these reasons, Sandhills has shown evidence that supports its claims for misappropriation of trade secrets and therefore is likely to succeed on the merits of its claims.

**B.     Defendants Fail to Refute that Sandhills Is Suffering and Will Continue to Suffer Irreparable Harm Absent Injunctive Relief.**

Defendants' opposition appears to be arguing that Sandhills cannot show it has suffered any irreparable harm because Sandhills is not in the "same line of business" as Defendants – thus, repeating their only argument that Sandhills somehow has not shown a likelihood of success on the merits of its breach of contract claims. For sake of brevity, Sandhills respectfully refers the Court to Section A.1. of this reply brief, which clearly demonstrates that Sandhills and Facts Technology are directly competing in the online auction business.

Moreover, Defendants fail to offer any substantive argument in response to Sandhills showing that it has suffered and will continue to suffer irreparable harm based on Defendants' unlawful solicitations of its customers and the loss of its goodwill and reputation caused by Defendants' conduct. To the extent Defendants are attempting to claim that Sandhills' solicitation allegations constitute "unfounded speculation," this argument is beyond frivolous and can be summarily disposed of by the

12

Court. The fact is that Defendants' unlawful solicitations are the opposite of "unfounded speculation." Sandhills has shown through unequivocal evidence (including declarations from several of its customers and solicitation emails sent by Defendants) that Defendants have solicited and will continue to solicit Sandhills' customers unless restrained by the Court. (*See* Verified Compl., at ¶¶42-67; **Dimick, Gombiski, Welch, Essay and Hilpipre Declarations**[6]). Therefore, Sandhills has made a clear showing of irreparable harm. *See, e.g., Heartland Payment Sys., LLC v. Volrath*, 2017 U.S. Dist. LEXIS 213648 (D.N.J. Dec. 30, 2017), *aff'd*, 762 F. App'x 95 (3d Cir. 2019); *Healthcare Servs. Grp. v. Fay*, 597 F. App'x 102, 103-04 (3d Cir. 2015).

Finally, Defendants' claim that any loss of goodwill was "self-inflicted" by Sandhills' terminating Garafola, after it learned that he was making plans to unlawfully compete with Sandhills while he was still employed by the company, is incredulous. (*See* Verified Compl., at ¶ 37). It is obvious that Defendants are attempting to obfuscate this issue in order to avoid addressing the fact that Sandhills' goodwill and reputation is being harmed by Defendants' blatant misrepresentations in their solicitations to Sandhills' customers.

Defendants have offered absolutely no justification for why it is misrepresenting to customers how long Facts Technology and Auctioneer Facts have been operating: "Auctioneer Facts: *decades* of auction experience and online bidding," (**Welch Declaration II**, ¶ 6, Ex. B, thirteenth page of the website printout (emphasis added)), and that Auctioneer Facts has been in business "since 1999" (**Dimick Declaration**, Ex. A, pp. 2 and 4) when in reality Garafola just formed Facts Technology and Auctioneer Facts in September 2019. (*See* Verified Compl., at ¶3). Further, Facts Technology's solicitations of its Auctioneer Facts service also attempt to connect itself to Equipmentfacts by conspicuously advertising that it is "[l]ed by Larry Garafola, Founder of Equipmentfacts." (*See* Verified Compl., at ¶¶52-59; **Dimick Declaration**, Ex. A, p. 4). The only reason for Defendants to include such misrepresentations in their solicitations to Sandhills' customers is that they are attempting to use and take advantage of Sandhills'

---

[6] Exs. 1, 2, 3, 4 and 5, respectively, to Miller Certif. I.

goodwill (which includes the goodwill Sandhills purchased through buying Equipmentfacts from Garafola for $1.5 million) to steal its customers.

This irreparable harm to Sandhills' goodwill is not just speculation – rather, it is concrete as several customers have already contacted Sandhills with questions and concerns about Defendants' email solicitations. (*See **Dimick, Gombiski, Welch, Essay, Hilpipre Declarations***). Indeed, at least one Sandhills customer has affirmed that Defendants' solicitations led him to question whether Facts Technology and Auctioneer Facts were a part of Sandhills. (*See **Dimick Declaration***).

Accordingly, Sandhills has shown that it is being irreparably harmed through the loss of its goodwill and reputation due to Defendants' unlawful conduct. *See, e.g.*, *Heartland*, 2017 U.S. Dist. LEXIS 213648, at *25, *aff'd*, 762 F. App'x 95 (3d Cir. 2019) (finding plaintiff demonstrated irreparable harm where the defendant was taking advantage of the connections he made while working for plaintiff to convince customers to switch to his new employers).

    **C.**    **Defendants Have Failed to Show that the Balance of Harm Weighs in Their Favor or that Injunctive Relief Will Harm the Public Interest.**

Defendants again recite their disproven argument that they are not competing against Sandhills to claim that the balance of harm weighs in their favor and that injunctive relief will harm the public interest. Again, this argument fails because Sandhills and Facts Technology are directly competing in the online auction business in violation of the Restrictive Covenant Agreement and Garafola PMA. *See* supra, Section A.1.

Moreover, any attempt by Defendants to argue that the balance of harm weighs in their favor because injunctive relief will preclude Garafola from making a living is belied by the fact that he was paid $1.5 million in 2018 by Sandhills for the purchase of Equipmentfacts, which included its customers and goodwill and Garafola's agreement to abide by the restrictive covenants. In addition to the $1.5 million Garafola has already received from Sandhills, a reasonable security bond will mitigate any alleged harm caused to Garafola.

Lastly, the public interest will undoubtedly be served by enforcing the restrictive covenants agreed to by Garafola pursuant to Sandhills' purchase of Equipmentfacts for a considerable sum of money. To the contrary, legitimate businesses like Sandhills will be harmed and will no longer consider entering into purchase agreements with other companies if restrictive covenants ancillary to the purchase/sale of a business are not enforced by the Court.

### D. Defendants Fail to Rebut that They Must Be Ordered to Return Sandhills' Confidential and Proprietary Information.

In opposition to Sandhills' Application, Defendants do not dispute that Sandhills should be entitled to an order requiring Defendants to return Sandhills' confidential and proprietary information. Instead, Garafola merely claims that he has not misappropriated any proprietary information. Yet, Sandhills has evidence that Garafola: (1) transmitted specific proprietary information of Sandhills to his personal Gmail account; (2) accessed a spreadsheet containing proprietary information shortly before his termination, despite having no legitimate business purpose for doing so; and (3) has solicited several Sandhills customers, who have never provided Defendants with their respective email addresses, absent Garafola's prior connection with EquipmentFacts and employment with Sandhills. (Verified Compl., at ¶¶ 40-67; *Dimick, Gombiski, Welch, Essay, Hilpipre Declarations*). As such, the Court should require Garafola and Facts Technology to affirmatively return any Sandhills' proprietary and confidential information in their possession.

### IV. CONCLUSION.

For the foregoing reasons, as well as those reasons stated in Sandhills' moving brief, Sandhills respectfully requests that this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65.1, enter an Order enjoining Defendants Lawrence Garafola and Facts Technology LLC as requested in the Application.

Respectfully submitted,

By: */s/ John D. Miller, III*
John D. Miller, III
*Attorneys for Plaintiff Sandhills Global, Inc.*

DATED: December 4, 2019

15