

# TRINITY & FARSIOU

## ATTORNEYS AT LAW

Joseph F. Trinity
JTrinity@TrinityandFarsiou.com

Certified by the Supreme Court
of NJ as a Civil Trial Attorney

Richard J. Delello
Of Counsel

47 Maple Avenue, Suite 7, Flemington, NJ 08822
P: (908) 824-7265 · F (908) 968-3891

December 10, 2019

Steven D. Farsiou
SFarsiou@TrinityandFarsiou.com
Also a member of the PA Bar

Joseph F. Trinity, III
JFT3@trinityandfarsiou.com

**VIA ELECTRONIC FILING**
Hon. Michael A. Shipp, U.S.D.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> Re:     **Sandhills Global, Inc. v. Garafola, et al.**
>           **Case No.: 3:19-cv-20669**

Dear Judge Shipp:

As Your Honor is aware, this firm represents the Defendants, Lawrence Garafola and Facts Technology, LLC. ("Defendants"), in connection with the above-referenced matter. Please accept this letter brief in lieu of a more formal brief as Defendants' sur-reply, as permitted by Your Honor's Text Order dated December 6, 2019, with respect to Plaintiff Sandhills Global, Inc.'s ("Sandhills" or "Plaintiff") application for a temporary restraining order and preliminary injunction.

## PRELIMINARY STATEMENT

Sandhills' reply brief to the opposition filed by Defendants cries of irreparable harm but provides no evidence to support this claim. In doing so, Sandhills simply twists words and essentially claims that any equipment or trucks that are sold, whether they are in the agricultural or construction industries or not, is in competition. This is disingenuous and would essentially re-write the restrictive covenants that are at issue in this case. In order for the Court to enter temporary restraints and a preliminary injunction, Sandhills must meet **all** four requirements pursuant to Kos

Hon. Michael A. Shipp, U.S.D.J.
Page 2

Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d. Cir. 2004) (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)). Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." Id. "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, **noncontested** status of the parties." Id. (Emphasis Added).

Preliminary injunctive relief is an equitable remedy imposed at the discretion of the Court. The determination to grant temporary restraints or a preliminary injunction is made on an individualized basis after consideration of questions of justice, equity and morality presented by the circumstances of each particular case. Zon. Bd. Of Adj. v. Service Elec. Cable T.V., 198 N.J. Super. 370, 379 (App. Div. 1985); New Chancellor Cinema, Inc. v. Town of Irvington, 169 N.J. Super. 564, 572 (Law Div. 1979). Significantly, "a preliminary injunction does not issue as of right by only upon a showing that ... the material facts are **not** in dispute" News Printing Co. v. Borough of Totowa, 211 N.J. Super. 121, 129 (Law. Div. 1986)). (Emphasis Added).

Sandhills not only fails to meet this stringent standard but actually provides evidence to the contrary. The certifications, which were prepared by Sandhills' attorneys, are self-serving and do not support any irreparable harm. In fact, the individuals certify that they would never do business with Garafola. It is also clear that the only issue pertains to monetary losses.  (See Plaintiff's Initial Moving Papers, Exhibits 1, 2 and 7). The available "evidence" demonstrates that Plaintiff's claims against Defendants are meritless, and should be dismissed, with prejudice. At a minimum, there are several material facts in dispute.

Hon. Michael A. Shipp, U.S.D.J.
Page 3

**LEGAL ARGUMENT**

**POINT I**

**SANDHILLS' RESTRICTIVE COVENANTS ARE REPITITVE AND WERE SPECIFIC
TO THE AGRICULTURAL AND CONSTRUCTION INDUSTRIES**

Sandhills admittedly has two conflicting restrictive covenants. The first restrictive covenant was included in the Asset Purchase Agreement ("APA"). (See Plaintiff's Verified Complaint, Exhibit B). The APA pertained to Garafola's business, EquipmentFacts, which was the industry leader in the sale of equipment and machinery in the agricultural and construction industries. This was the specific business that Sandhills purchased. To the extent Sandhills is now claiming that the restrictive covenants pertain to any and all industries, this is not what Garafola agreed to. Furthermore, this would clearly render the restrictive covenants unreasonable and overly broad. In addition, this was not just a straight asset purchase. Part and parcel with this agreement was that Garafola would be hired as the Manager of Auction Services, which required him to continue running Equipmentfacts as an employee – the same business he founded and ran for years. Interestingly, Sandhills does not cite to the restrictive covenant to support their position of a "competing business" being any business that Sandhills may or may not be in. Instead, it cites to the self-serving Certification of Evan Welch, the Sandhills' in-house attorney. There is absolutely no support for its position.

The second restrictive covenant was included in the employment agreement given to Garafola. This covenant has an 18-month restriction based on the "Restricted Business," which is defined as "the business of providing an online auction platform or online auction services for the purpose of facilitating the sale of equipment or machinery that is used in the agriculture or construction industries that competes with the Company." (See Plaintiff's Verified Complaint, Exhibit C). Significantly, nothing submitted by Sandhills provides even the slightest violation of

Hon. Michael A. Shipp, U.S.D.J.
Page 4

this agreement by Garafola. Moreover, as pled in Garafola's Counterclaim in the companion case,

<u>Sandhills Global, Inc. v. Garafola, et. al.</u>, Docket No.: 3:19-cv-17225 (MAS)(TJB) ("Sandhills

1"), Sandhills unequivocally breached Garafola's employment contract by violating Section 3 by

unilaterally removing Garafola from his position of Manager of Auction Services and by failing

to provide "Schedule A." Not only did Garafola not violate the restrictive covenant but Sandhills

nullified any such provision by violating the contract.

Significantly, Sandhills does not provide any evidence to demonstrate that Permian

International Energy Services ("Permian") was a "long-standing" customer of Sandhills with

respect to the Oilfield industry. This is actually false as evidenced by the Certification of Eric

Dyess, one of the owners of Permian. (<u>See</u> Certification of Steven D. Farsiou, Exhibit C).[1] As can

be seen from Mr. Dyess' Certification, Permian has only been doing business since October 3,

2018, a little over a year. Furthermore, Dr. Dyess certifies that Garafola did not solicit his business.

<u>Id</u>. As such, there is no truth to Permian being a long-time customer or that Garafola somehow

stole his business.  Furthermore, although not stated by Sandhills, there is a difference between the

equipment industry and the oilfield industry. This is evidenced by the fact there are different

publications for each. In fact, Sandhills has a publication called Machinery Trader for construction

equipment, and is trying to create a publication called, Oilfield Trader, but this has yet to go to

print.

Lastly, once again, Sandhills baldly asserts that Garafola misappropriated proprietary

information, but does not provide any specific information to support this claim. There is no

evidence of any such conduct. In addition, Sandhills has refused to provide this same very

discovery in Sandhills 1. In fact, no such document has been provided to date to support this claim.

---

[1] Defendants' Exhibits will continue from their opposition brief.

Hon. Michael A. Shipp, U.S.D.J.
Page 5

Moreover, any contention that Garafola, someone with over 20 years of experience, needs to take property from Sandhills is absurd. Sandhills falsely represented the asset purchase to Garafola, stole Garafola's business and now wants to prevent him from earning a living at the current time, even though Garafola is not violating the restrictive covenants.

## POINT II

### PLAINTIFF'S SELF-SERVING INTERPRETATION OF THE RESTRICTIVE COVENANTS AND THE ASSET PURCHASE AGREEMENT PREVENTS THIS COURT FROM ENTERING A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Sandhills claims that the APA restrictive covenant applies to any business that it may have an interest in and that the employment agreement restrictive covenant applies essentially to the same thing. This is not only irrational but not what the parties agreed to. Although Sandhills only purchased EquipmentFacts, it is attempting to restrain all trade which must be narrowly construed. Marvin Goldstein & Stanley Goodman, 18 New Jersey Practice: Employment Law, § 11.3 at 363 (2d ed. 2005). It is well-settled in New Jersey that the cardinal rule in the interpretation of any contract is to "ascertain and give effect to the common intention of the parties so far as it may be effectuated without infringing legal principles." Corn Exch. Natl Bank & Trust Co. v. Taubel, 113 N.J.L. 605, 608-09 (E. & A. 1934). Consequently, a writing that does not represent nor even purport to serve as a statement of the common intent between two parties, cannot serve as the source of enforceable obligations between them. See Medivox Prods., Inc. v. Hoffmann-LaRoche, Inc., 107 N.J. Super. 47, 55 (Law Div. 1969). This rule applies even more strongly to covenants that have the effect to restrain trade, which are subject to more careful scrutiny. Rubel & Jensen Corp. v. Rubel, 85 N.J. Super. 27, 34 (App. Div. 1964) (covenants restricting competition to be "strictly construed and rigidly scanned"), quoting, Haul v. Rossbach, 128 N.J. Eq. 77, 80 (Ch.1940), affirmed o.b, 128 N.J. Eq. 478, 17 A.2d 165 (E. & A. 1941).

Hon. Michael A. Shipp, U.S.D.J.
Page 6

Furthermore, when contract terms are ambiguous, the party who is not the drafter of the document is entitled to the most favorable meaning of the potential contract interpretations. Pacifico v. Pacifico, 190 N.J. 258 (2007); see also, Chubb v. Prudential Insurance Co. of America, 195 N.J. 231, 238 (2008) ("Where a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party if the contract was the result of negotiations between parties of unequal bargaining power."). When the terms of a contract can be interpreted in two reasonable alternative ways, there exists an ambiguity. Chubb, 195 N.J. at 238.

Any contention by Sandhills that the restrictive covenants are different and pertain to all businesses of Sandhills, including businesses that are not up and running, is not only factually false but not the agreement that Garafola agreed to enter into. The restrictive covenants were to simply pertain to EquipmentFacts business, which was in the business of providing full-service online auction services in the sale of equipment or machinery in the agriculture or construction industries. Facts Technology does not compete in this area. In addition, Sandhills does not license software – something not disputed in Sandhills' reply papers.

## POINT III

### PLAINTIFF HAS NOT ESTABLISHED WITH NON-CONTESTED FACTS THAT IT WILL SUCCEED ON THE MERITS

Plaintiff claims in this action sound in equity, however, it is axiomatic that a party seeking equity may not come with unclean hands. Chrisomalis v. Chrisomalis, 260 N.J. Super. 50, 53-54 (App. Div. 1992) ("[t]he basic equitable maxim of unclean provides that '[a] suiter in equity must come into court with clean hands[.]"', quoting, A. Hollander & Sons v. Imperial Fur Blending Corp, 2 N.J. 235, 246 (1949). Simply put, Plaintiff cannot have it both ways. It cannot deprive Garafola of the ability to work in other areas that were not contemplated in the restrictive covenants

Hon. Michael A. Shipp, U.S.D.J.
Page 7

and still contend that it has clean hands deserving enforcement of equitable rights against Garafola. As stated above, Plaintiff not only violated Garafola's employment agreement but it appears Plaintiff intentionally misrepresented Garafola's employment position with the intention to have Garafola give up his business that he founded and became the industry leader in. Essentially, Sandhills stole Garafola's business to try and utilize his system and rid a potential competitor in Garafola.

Moreover, the restrictive covenant under the APA purports to preclude competition for a period of five years. There is absolutely no justification presented in Plaintiff's application for such an oppressive restriction, which cannot be sustained as a matter of law. Restrictive covenants, such as a covenant not to compete, limit competition in the market place, a person's potential ability to earn a livelihood, and the available pool of qualified employees for hire. See, e.g., Andrew Beckerman-Rodau, A Jurisprudential Approach to Common Law Legal Analysis, 52 Rutgers L. Rev. 269, 300-301 (1999). Accordingly, such covenants are anti-competitive in their nature, and essentially restrict trade. Id. From the outset of the modem legal system, courts traditionally have not favored nor upheld contracts that put direct restraints on trade.

New Jersey courts enforce non-compete agreements only where the terms of the covenant are reasonable. Solari Industries, Inc. v. Malady, 55 N.J. 571, 576 (1970). Provisions of a non-compete agreement will be found reasonable only to the extent the provisions: (1) simply protect the legitimate business interests; (2) impose no undue hardship; and (3) are not injurious to the public. Id. In practical application, the analysis balances the legitimate interests of the parties as well as the public interest. Coskey's Television & Radio Sales and Service, Inc. v. Foti, 253 N.J. Super. 626 (App. Div. 1992). Garafola understood the restrictions to only be as to the business that EquipmentFacts was running. There was never any discussion or negotiation as to restricting

Hon. Michael A. Shipp, U.S.D.J.
Page 8

Plaintiff from the entire auction services world. No such agreement was ever made or contemplated by Garafola.

As previously stated, Plaintiff's claims are frivolous. To plead a viable cause of action, the allegations must transcend the "speculative," "conceivable," or "possible," and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 566, 570 (2007). When "the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct," they do not state a plausible claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). The Third Circuit has interpreted this stricter pleading requirement set forth in Twombly and Iqbal as a "heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

The company name, Facts Technology, signifies it is a technology company first. There are two basic services. The one service is similar to Equipmentfacts but importantly, this service is not being offered in the agricultural or construction business. The second service is the selling of a software license to auctioneers or anyone else looking to have an online auction format. In its reply, Sandhills twists the words to try and establish some type of violation.

With respect to the online bidding service, Facts Technology is doing this in the following industries:  OilfieldFacts,  CollectorCarFacts,  BigRigFacts,  Machinefacts,  RecreationFacts, MotorsportsFacts,  LandandHomeFacts,  ControllerFacts,  StockyardFacts,  VehicleFacts, CollectibleFacts and BidderFacts. These industries are all specifically outside of the restrictive covenants.  These  divisions  provide  a  full-service  online  bidding  system  just  like Equipmentfacts. This means that all upcoming auctions are posted and advertised to bidders. In addition, the auctioneers' inventory and pictures are uploaded and the online bidding software is run for the client. Once the auction is complete, the specific company provides the auctioneer with

Hon. Michael A. Shipp, U.S.D.J.
Page 9

all the winning bidder data so invoices and stats can be run. The company will assist with collecting payment, including running the credit card processing system. Significantly, none of the services listed above provides the service prohibited in the restrictive covenants. Garafola did this intentionally so there were no issues.

In reply, Sandhills makes the argument that a Ford pick-up truck in an OilfieldFacts auction is similar to the ones sold by Equipmentfacts. However, if the truck is being used in a completely different industry, this does not violate the restrictive covenant. Based on Sandhills argument, any similar vehicle, whether it is being used in an industry it does not do business in, would violate the restrictive covenant. Sandhills is simply manipulating words and the contract language to stop Garafola from any type of work, even if it does not provide a service in that particular industry. The language agreed to was specific to the agricultural and construction industries because that is what EquipmentFacts did.

Lastly, AuctioneerFacts is a software license for an online bidding platform. It simply creates software for a company for it to do with it as it chooses, which could include hiring a company like Sandhills to run it. AuctioneerFacts creates the platform, provides a username and password, provides two hours of training and nothing more. There is a monthly hosting fee and a per auction fee based on the number of auctions they conduct, which is common in the leasing of software. Companies like Constant Contact, Go Daddy, MailChimp, Vimeo, Microsoft, etc. charge a monthly fee for the use of the software or technology. AuctioneerFacts has no bidders and does not handle any aspect of the auction. Notably, Sandhills did not and cannot contest that it does this type of work.

Furthermore, the website for AuctioneerFacts clearly demonstrates that it is only providing technology and software to auctioneers. There is a clear difference when you compare the websites

Hon. Michael A. Shipp, U.S.D.J.
Page 10

for Equipmentfacts and AuctioneerFacts. (See Certification of Steven D. Farsiou, Esq., Exhibit D).[2] Sandhills has conveniently manipulated parts of the Facts Technology website to make it appear as if there is a violation of the restrictive covenants. Specifically, Sandhills argues words like "platform," "solution" and "broadcaster" to show some type of violation. However, these are commonly used words across the online bidding and auction world. Garafola intentionally stayed out of the business of providing an online platform for equipment and machinery with respect to the agricultural and construction industries. Each product name that is shown on the Facts Technology website is clearly not in the restrictive business. It should be noted that Facts Technology was actually established on August 3, 2003 but was not active. (See Certification of Steven D. Farsiou, Exhibit E). It is clear that this business was separate from EquipmentFacts.

New Jersey law is very clear that a party seeking to enforce a restrictive covenant may not prevent a person from utilizing, in competition, general skills and knowledge in an industry, including those acquired during his tenure with an employer. Similarly, a restrictive covenant may not preclude the person from benefitting from his or her relationships within the industry. Id. Here, Sandhills is seeking to gain an advantage in other industries not related to the restrictive covenants in an effort to entirely control any business in the auction world by eliminating potential competition.

## CONCLUSION

Sandhills has not and cannot show any irreparable harm. At best, Sandhills is attempting to expand the restrictive covenants to prevent Garafola from earning a living in businesses that may result in competition in the future. However, this is not what the agreed upon restrictions were. The only harm Sandhills can claim is monetary, which is not the basis for a temporary

---

[2] Exhibit D is a comparison spreadsheet prepared by Garafola

Hon. Michael A. Shipp, U.S.D.J.
Page 11

restraining order or a preliminary injunction. Furthermore, there are clearly disputed material facts

which would prevent any injunctive relief. See News Printing Co., 211 at 129.

      Lastly, the balance of harms does not weigh in Plaintiff's favor and in fact will harm the

public interest. Garafola is simply trying to earn a living within the parameters of the restrictive

covenants for the time being. Garafola has filed a Counterclaim in Sandhills 1, and a motion to

dismiss in this case. Sandhills is seeking to monopolize the auction world which would not be in

the interest of free trade and will injure the public.

                    Respectfully submitted,

                    */s/ **Steven D. Farsiou***

                    STEVEN D. FARSIOU

cc:      Client
          All Counsel of Record *(via electronic filing)*