## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SANDHILLS GLOBAL, INC.,

        Plaintiff,

        v.

LAWRENCE GARAFOLA, individual, and
FACTS TECHNOLOGY LLC, a New Jersey
limited liability company,

        Defendants.

Civil Action No. 3:19-cv-20669

---

### PLAINTIFF SANDHILLS GLOBAL, INC.'S OPPOSITION TO DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

BRESSLER, AMERY & ROSS, P.C.
John D. Miller, III
Justin E. Condit
325 Columbia Turnpike
Florham Park, NJ 07932
(973) 514-1200
(973) 514-1660 (facsimile)

and

KOLEY JESSEN PC, LLO
Margaret C. Hershiser *(pro hac vice* to be filed)
Patrice D. Ott *(pro hac vice* to be filed)
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9500 (facsimile)

*Attorneys for Plaintiff Sandhills Global, Inc.*

Of Counsel:
    John D. Miller, III, Esq.

On the Brief:
    John D. Miller, III, Esq.
    Justin E. Condit, Esq.

## **TABLE OF CONTENTS**

**Page**

I.    RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT .............................................................................................1

II.    LEGAL ARGUMENT......................................................................21

    A.    Contrary to Defendants' Unsupported Contention Otherwise, Sandhills Has Demonstrated that It Is Suffering and Will Continue to Suffer Irreparable Harm Absent Injunctive Relief......................21

    B.    Defendants Fail to Legitimately Refute that Sandhills Has a Likelihood of Success on the Merits of Its Claims. ........................................23

        1.    Sandhills Is Likely to Succeed on the Merits of Its Breach of Contract Claims. .................................................................. 23

            a.    The APA Non-Compete Restrictive Covenant Is Reasonable and Enforceable...............................................25

            b.    The Record Evidence Establishes that Garafola, as Facts Technology, Breached the Non-Compete Restrictive Covenants. ..........................................26

            c.    Defendants Have Provided No Evidence to Support a Finding that Sandhills Materially Breached His Employment Agreement – Let Alone Any Legal Authority to Nullify His Restrictive Covenants..................................27

        2.    Sandhills Is Likely to Succeed on the Merits of Its Misappropriation of Trade Secrets Claims. ............................................. 28

        3.    Sandhills Is Likely to Succeed on the Merits of Its Tortious Interference Claims..................................................................... 29

    C.    Defendants' Claim that the Balance of Harms Weighs in Their Favor Is Without Merit. ..................................................................29

    D.    There Is No Basis to Require Sandhills to Pay Garafola's "Lost Income, Attorneys' Fees and Costs."...............................................30

III.    CONCLUSION.....................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acierno v. New Castle Cty.,*
 40 F.3d 645 (3d Cir. 1994)..............................................................................................22, 23

*Ecri v. McGraw-Hill,*
 809 F.2d 223 (3d Cir. 1987)....................................................................................................23

*Louis v. Bledesoe,*
 438 F. App'x 129 (3d Cir. 2011) ............................................................................................22

**Rules**

Fed. R. Civ. P. 11(c)(2)..................................................................................................................31

## I.      RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT

Defendants' Proposed Findings of Fact contain numerous, material inaccuracies and, in many instances, the record evidence does not support the contentions Defendants offer as "facts."  Plaintiff exposes those failures below through a paragraph by paragraph analysis. Regardless of that exercise, Defendants' Proposed Findings of Fact do not, in any way, provide the Court with a credible, supported basis to deny Plaintiff the Preliminary Injunctive relief it seeks and has fully supported through specific citations to record evidence.

1.      Mr. Welch testified that Sandhills is not a "billion-dollar company."  (E.W. T1 151:22 to 153:2).

2.      Mr. Garafola testified that Equipmentfacts had been in business for approximately 19 to 20 years not that it was founded in 2001.  (L.G. T2 107:22-25).

3.      Mr. Garafola testified that Equipmentfacts operates "[h]eavy equipment and farm construction auctions" industry.  (*Id.*)

4.      Mr. Garafola did not testify about Equipmentfacts' "simulcast solutions."

5.      Mr. Welch testified that Bidcaller was "pretty strong in the farm equipment industry[.]"  E.W. T1. 15:20-22.

6.      Mr. Welch testified that Bidcaller was "pretty strong", and that it was Sandhills's "simulcast auction service."  (*Id.*)

7.      Mr. Welch's testimony supports the statement of "facts" referenced in this paragraph.

8.      Mr. Welch's testimony and P-1 support the statement of "facts" referenced in this paragraph.

9.      Mr. Welch's testimony and P-2 support the statement of "facts" referenced in this paragraph.

10.     P-2 and D-1 support the statement of "facts" referenced in this paragraph.

11.     P-2 supports the statement of "facts" referenced in this paragraph.

12.     P-2 supports the statement of "facts" referenced in this paragraph.

13.     P-3 (APA Restrictive Covenant Agreement) supports the statement of "facts" referenced in this paragraph.

14.     P-3 (APA Restrictive Covenant Agreement) supports the statement of "facts" referenced in this paragraph, however, P-3 identifies additional prohibited conduct, not just the quoted section.   Additionally, Paragraph 1.c. of P-3 incorporates by reference the definition "Business" contained in the APA, P-2.

15.      P-2 (Asset Purchase Agreement ("APA")) references D-1 (Employment Agreement) but does not state that it was "part in parcel."   In fact, Mr. Welch disagreed with that phrase in Plaintiff's questioning and clarified that Employment Agreement "was separate from the Purchase Agreement."  (E.W. T1. 156:24 to 157:1).

16.     D-1 supports the statement of "facts" referenced in this paragraph, but without the provided emphasis.

17.     Mr. Welch testified that he did not recall whether a job description was or wasn't provided, and further testified that Mr. Garafola never spoke with him about a job description or asked for a job description.  Indeed, Mr. Welch testified that Mr. Garafola "knew what his job responsibilities were.  They didn't change from the time he came over from Equipmentfacts to when he was running Equipmentfacts for Sandhills.  And his job title stayed the same.  I was never asked for a job description by Larry."  (*Id.*, at 168:2-5, 169:11-15).

18.     Mr. Welch explicitly testified that Sandhills **did not** "strip . . . the duties away from" or change Mr. Garafola's title.  (*Id.*, 222:4-9).

19.     Neither D-1 nor any witness testimony support the statement of "facts" in this paragraph.

20.     D-1 <u>does not support</u> the statement of "facts" in this paragraph.

21.     P-4 supports the statement of "facts" referenced in this paragraph, however, P-4 identifies additional prohibited conduct, not just the quoted section, including, in particular, the nonsolicitation provision found at Paragraph 6, and return of company property provision found at paragraph 8.

22.     The record evidence does support the statement "fact" that Marlene Greene resigned from her position with Sandhills on July 18, 2019.

23.     The record evidence supports the statement of "facts" in this paragraph.

24.     The record evidence supports the statement of "facts" in this paragraph.

25.     The record evidence supports the statement of "facts" in this paragraph.

26.     The record evidence supports that the referenced email (P-5) was the "catalyst" for Sandhills's investigation into employee misconduct, including email review and forensic analysis of work-issued devices.  It was the scope of misconduct that the investigation uncovered that resulted in the termination of Mr. Garafola's employment with Sandhills.  (E.W. T1. 41:18 to 47:6).

27.     The record evidence supports the statement of "facts" in this paragraph, including in particular, that, in P-6, Mr. Garafola stated: "I can start a competing business like AuctionTime [a Sandhills brand]."

28.     The record evidence supports the statement of "facts" in this paragraph.

29.     P-5 does not specifically reference Mr. Garafola by name.

30.     The record evidence supports the statement of "facts" in this paragraph.

31.     The record evidence supports the statement of "facts" in this paragraph, including in particular, that, in P-6, Mr. Garafola stated: "I can start a competing business like AuctionTime [a Sandhills brand]."

32.     The record evidence supports the statement of "facts" in this paragraph, including that Mr. Welch testified that "[t]here's talk of starting a new business, Equipmentfacts 2.0.  And then, in the weeks following, there's the raiding of all of Sandhills' intellectual property and intellectual property of Equipmentfacts."  (E.W. T1. 72:10-13).

33.     The record evidence supports the statement of "facts" in this paragraph, including in particular, that at or about time of his July 5, 2019 email (P-6), Mr. Garafola was "considering . . . [competitive business] options because [he was] frustrated with how things were going in Equipmentfacts."  (L.G. T2. 172:8-11).

34.     Mr. Welch testified as to his belief concerning Mr. Garafola's competing business opportunity with Bidfacts LLC and further testified that Sandhills's investigation uncovered hundreds of email examples of Mr. Garafola's misconduct.  Moreover, discovery has not started in this litigation.  (E.W. T1. 47:1-3).

35.     Mr. Garafola testified to the "facts" contained in his paragraph, however, Sandhills believes that discovery may uncover additional details around Mr. Garafola's business arrangement with Bidfacts LLC.

36.     The record evidence supports the statement of "facts" in this paragraph, including exhibits P-6 to P-18.

37.     The record evidence supports the statement of "facts" in this paragraph.

38.   The record evidence supports the statement of "facts" in this paragraph.

39.   The record evidence <u>does not support</u> that Mr. Welch adopted or agreed with Defendants' counsel's characterization of emails presented to him.  (*See*, *e.g.*, E.W. T2. 20:6-8, 23:13-21).

40.   The record evidence supports the statement of "facts" in this paragraph.

41.   The record evidence <u>does not support</u> the statement of "facts" in this paragraph.

42.   The record evidence supports the statement of "facts" in this paragraph.

43.   Mr. Welch testified that Mr. Garafola did support and signed off on the roll out of Bidcaller.  (E.W. T1. 100:20 to 101:3, 161:10 to 18, 162:20-21, 163:1-21).

44.   Mr. Welch testified that Mr. Garafola did support and signed off on the roll out of Bidcaller.  (*Id.*).

45.   Mr. Welch testified that Sandhills was aware of customer complaints, but not "numerous" complaints.  (*Id.*, at 191:7-11).

46.   D-6 and D-7 speak for themselves.  Additionally, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

47.   D-6 and D-7 speak for themselves. Additionally, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

48.   Discovery has not commenced in this litigation nor is a Discovery Order in place that would require the production of D-6 or D-7.   Regardless, record evidence concerning

Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

49.     Discovery has not commenced in this litigation nor is a Discovery Order in place that would require the production of D-6 or D-7.   Regardless, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

50.     D-8 speaks for itself.   Moreover, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

51.     D-8 speaks for itself.   Moreover, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

52.     D-9 speaks for itself.   Moreover, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

53.     D-10 speaks for itself.   Moreover, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants

contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

54.     Discovery has not commenced in this litigation nor is a Discovery Order in place that would require the production of D-10.  Regardless, record evidence concerning Bidcaller is irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).

55.     The record evidence supports the statement of "facts" in this paragraph.

56.     The record evidence supports the statement of "facts" in this paragraph, however, the fact the Mr. Welch did not recall the identity of Gary Bergman has no bearing on the fact that Defendants violated the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).  (*See* Plaintiff Proposed Findings of Fact, ¶ 41).

57.     D-11 speaks for itself.  Regardless, the email exchange reflected in D-11 is irrelevant to the issues before the Court, *i.e.*, Defendants are doing business with Sandhills's former customer, Permian, in violation of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).  (*See* Plaintiff Proposed Findings of Fact, ¶¶ 39-41).

58.     D-11 speaks for itself.  Regardless, the email exchange reflected in D-11 is irrelevant to the issues before the Court, *i.e.*, Defendants are doing business with Sandhills's former customer, Permian, in violation of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4). (*See* Plaintiff Proposed Findings of Fact, ¶¶ 39-41).

59.     D-11 speaks for itself.   Regardless, the email exchange reflected in D-11 is irrelevant to the issues before the Court, *i.e.*, Defendants are doing business with Sandhills's former customer, Permian, in violation of the restrictive covenants contained in APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).   (*See* Plaintiff Proposed Findings of Fact, ¶¶ 39-41).

60.     The record evidence indisputably demonstrates that Mr. Garafola sent to his personal Google mail ("Gmail") account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).

61.     The record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).

62.     The record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).

63.     The record evidence does not support the statement of "facts" in this paragraph.

64.     The record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of

pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).

65.     The record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).

66.     Discovery has not commenced in this litigation nor is a Discovery Order in place that would require the production of D-12.  Additionally, the record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).

67.     The record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).

68.     Discovery has not commenced in this litigation nor is a Discovery Order in place that would require the production of D-6 to D-12.  Moreover, Mr. Welch testified that Sandhills' investigation uncovered "dozens, if not hundreds" of emails demonstrating that Mr. Garafola

sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]." (E.W. T1. 47:1-3; P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28). In fact, Mr. Welch testified without contradiction that the confidential and proprietary information Mr. Garafola "raid[ed]" from Sandhills represented the building blocks for creating a competing business in the online auction industry, *i.e.*, "Equipmentfacts 2.0." (E.W. T1. 66:21-13, 68:15-16, 69:16-19, 72:10-13, 87:23 to 88:6; E.W. T2 53:6-11, 77:7-12).

69.   The record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]." (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28). In fact, Mr. Welch testified without contradiction that the confidential and proprietary information Mr. Garafola "raid[ed]" from Sandhills represented the building blocks for creating a competing business in the online auction industry, *i.e.*, "Equipmentfacts 2.0." (E.W. T1. 66:21-13, 68:15-16, 69:16-19, 72:10-13, 87:23 to 88:6; E.W. T2 53:6-11, 77:7-12).

70.   The record evidence does not support the contention contained in this paragraph. Rather, the record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]." (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28). In fact, Mr. Welch

testified without contradiction that the confidential and proprietary information Mr. Garafola "raid[ed]" from Sandhills represented the building blocks for creating a competing business in the online auction industry, *i.e.*, "Equipmentfacts 2.0." (E.W. T1. 66:21-13, 68:15-16, 69:16-19, 72:10-13, 87:23 to 88:6; E.W. T2 53:6-11, 77:7-12).

71.     The record evidence <u>does not support</u> the contention contained in this paragraph. Rather, the record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]." (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28). In fact, Mr. Welch testified without contradiction that the confidential and proprietary information Mr. Garafola "raid[ed]" from Sandhills represented the building blocks for creating a competing business in the online auction industry, *i.e.*, "Equipmentfacts 2.0." (E.W. T1. 66:21-13, 68:15-16, 69:16-19, 72:10-13, 87:23 to 88:6; E.W. T2 53:6-11, 77:7-12).

72.     The record evidence <u>does not support</u> the contention contained in this paragraph. Rather, the record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]." (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28). In fact, Mr. Welch testified without contradiction that the confidential and proprietary information Mr. Garafola "raid[ed]" from Sandhills represented the building blocks for creating a competing business in

the online auction industry, *i.e.*, "Equipmentfacts 2.0."  (E.W. T1. 66:21-13, 68:15-16, 69:16-19, 72:10-13, 87:23 to 88:6; E.W. T2 53:6-11, 77:7-12).

73.     The record evidence <u>does not support</u> the contention contained in this paragraph.  Rather, the record evidence indisputably demonstrates that Mr. Garafola sent to his personal Gmail account, without authorization or approval, numerous emails with hundreds of pages of Sandhills's confidential and proprietary business information shortly after he told Sandhills's competitor, Bidfacts LLC, that: "I can start a competing business like AuctionTime [a Sandhills brand]."  (P-6; *see also* Plaintiff Proposed Findings of Fact, ¶¶ 25-28).  In fact, Mr. Welch testified without contradiction that the confidential and proprietary information Mr. Garafola "raid[ed]" from Sandhills represented the building blocks for creating a competing business in the online auction industry, *i.e.*, "Equipmentfacts 2.0."  (E.W. T1. 66:21-13, 68:15-16, 69:16-19, 72:10-13, 87:23 to 88:6; E.W. T2 53:6-11, 77:7-12).

74.     The record evidence <u>does not support</u> the contentions in this paragraph.  Rather, Mr. Welch testified that Sandhills paid $1.5 million for all of the confidential and proprietary information Mr. Garafola "raid[ed]" from Sandhills.  (E.W. T1. 65:10-18, 72:10-13).

75.     The record evidence, including the customer declarations (P-21 to P-23), indisputably demonstrate that Sandhills has suffered and will continue to suffer irreparable harm as a result of Defendants' violations of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant (P-4).  (Plaintiff Proposed Findings of Fact, ¶¶ 43.a. to 43.g.).

76.     The record evidence, including the customer declarations (P-21 to P-23), indisputably demonstrate that Sandhills suffered and will continue to suffer irreparable harm as a result of Defendants' violations of the restrictive covenants contained in the APA Restrictive

Covenant Agreement (P-3) and the Employee Restrictive Covenant (P-4). (Plaintiff Proposed Findings of Fact, ¶¶ 43.a. to 43.g.).

77.     Neither the record evidence nor the quoted testimony support the contention contained in this paragraph. Rather, the record evidence, including the customer declarations (P-21 to P-23), indisputably demonstrate that Sandhills has suffered and will continue to suffer irreparable harm as a result of Defendants' violations of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant (P-4). (Plaintiff Proposed Findings of Fact, ¶¶ 43.a. to 43.g.).

78.     The record evidence supports the statement of "facts" contained in this paragraph. As Mr. Welch testified, because of Defendants' persistent and serious violations of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4), as well as the restraints contained in the Court's December 16, 2019 Temporary Restraining Order ("TRO"), Sandhills was forced to monitor the email accounts it hosted for its customers in order to understand the scope of Defendants' unlawful conduct. (E.W. T1. 125:4-8).

79.     The record evidence does not support the contention contained in this paragraph. Regardless, the uncontested record evidence demonstrates that Defendants violated the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4), as well as the restraints contained in the Court's TRO, by soliciting and doing business with Sandhills's current and former customers. (Plaintiff Proposed Findings of Fact, ¶¶ 39 to 43).

80.     The record evidence does not support the contention contained in this paragraph. Regardless, the uncontested record evidence demonstrates that Defendants violated the

restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4), as well as the restraints contained in the Court's TRO, by soliciting and doing business with Sandhills's current and former customers. (Plaintiff Proposed Findings of Fact, ¶¶ 39 to 43). As Mr. Welch testified, because of Defendants' persistent and serious violations of the restrictive covenants and the Court's TRO, Sandhills was forced to monitor the email accounts it hosted for its customers in order to understand the scope of Defendants' unlawful conduct. (E.W. T1. 125:4-8).

81.     The record evidence <u>does not support</u> the contention in this paragraph.

82.     The record evidence supports the fact that Mr. Welch provided declarations in support of Sandhills's litigation against Defendants. Additionally, the uncontested record evidence demonstrates that Defendants violated the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4), as well as the restraints contained in the Court's TRO, by soliciting and doing business with Sandhills's current and former customers. (Plaintiff Proposed Findings of Fact, ¶¶ 39 to 43). As Mr. Welch testified, because of Defendants' persistent and serious violations of the restrictive covenants and the Court's TRO, Sandhills was forced to monitor the email accounts it hosted for its customers in order to understand the scope of Defendants' unlawful conduct. (E.W. T1. 125:4-8).

83.     The record evidence supports that Mr. Welch testified as to his understanding of Sandhills's rights in connection with hosting email accounts for its customer. (E.W. T2. 100:19-21). As Mr. Welch testified, because of Defendants' persistent and serious violations of the restrictive covenants and the Court's TRO, Sandhills was forced to monitor the email accounts it

hosted for its customers in order to understand the scope of Defendants' unlawful conduct. (E.W. T1. 125:4-8).

84.     The record evidence supports that Mr. Welch testified as to his understanding of Sandhills's rights in connection with hosting email accounts for its customer. (E.W. T2. 100:19-21).  Regardless, the uncontested record evidence demonstrates that Defendants violated the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4), as well as the restraints contained in the Court's TRO, by soliciting and doing business with Sandhills's current and former customers. (Plaintiff Proposed Findings of Fact, ¶¶ 39-43).

85.     The record evidence <u>does not support</u> the contention in this paragraph.  In fact, the indisputable evidence demonstrates that Facts Technology provides online auction solutions that directly competes with the online auction solutions provided by Sandhills and its brands. ((Plaintiff Proposed Findings of Fact, ¶¶ 20-21, 31-43).

86.     The record evidence <u>does not support</u> the contention in this paragraph.  The indisputable evidence demonstrates that Facts Technology provides online auction solutions that directly competes with the online auction solutions provided by Sandhills and its brands, including but not limited to, white label solutions.  (Plaintiff Proposed Findings of Fact, ¶¶ 31 to 43).  In fact, the contentions contained in the paragraph are directly contradicted by Mr. Garafola's description of Auctioneerfacts that is marketed to the public on Facts Technology's website.  Mr. Garafola testified that Auctioneerfacts is active and currently available to the public, and that the below content that appears on the Auctioneerfacts's website is accurate:

- "Our Experienced Team. Auctioneer Facts: decades of auction experience in online bidding led by Larry Garafola, Founder of Equipmentfacts Team of auction professionals and programmers. . . ."

- "18 years of experience. Excellent reputation in the market. Over 100,000 auctions conducted with flying colors. State-of-the-art mobile technology. Far-reaching SEO expertise. Tried and renowned Technology. Proactive solutions and competitive strategies. 24/7 technology support."

- "Auctioneer branded solution. Full administrative tools. Platform fully integrated to your website. Live Webcast auction system. Timed auction system. Pre-bidding available. Payment solution. PCI-compliant. SEO-driven catalog. Google-driven catalog."

(D-5, Exhibit B; L.G. T2. 206:11 to 207:17).

87.     The record evidence supports the "facts" in this paragraph.  In fact, the indisputable evidence demonstrates that Facts Technology provides online auction solutions that directly competes with the online auction solutions provided by Sandhills and its brands, including but not limited to, white label solutions.  (Plaintiff Proposed Findings of Fact, ¶¶ 31 to 43; *see also* Plaintiff's Response to Defendants' Proposed Findings of Fact, *supra*, ¶ 86).

88.     The characterization of Mr. Welch's testimony in this paragraph is not accurate based on a complete reading of Mr. Welch's testimony regarding Sandhills's software and white label offerings.  In fact, the indisputable evidence demonstrates that Facts Technology provides online auction solutions that directly competes with the online auction solutions provided by Sandhills and its brands, including but not limited to, white label solutions.  (Plaintiff Proposed Findings of Fact, ¶¶ 31 to 43).

89.     The characterization of Mr. Welch's testimony in this paragraph is not accurate based on a complete reading of Mr. Welch's testimony regarding Sandhills's software and white label offerings.  In fact, the indisputable evidence demonstrates that Facts Technology provides online auction solutions that directly competes with the online auction solutions provided by Sandhills and its brands, including but not limited to, white label solutions.  (Plaintiff Proposed Findings of Fact, ¶¶ 31 to 43).

90.     Mr. Welch testified that, in addition to losing the Permian and Superior accounts, Sandhills lost other customer referrals.  (Plaintiff Proposed Findings of Fact, ¶ 43).

91.     The record evidence supports the fact that Mr. Welch testified without contradiction that the prior 12 months' gross revenue on the Permian and Superior accounts were approximately $147,000 and $136,000, respectively.  (E.W. T1. 135:4-25).  Additionally, Mr. Welch testified that Sandhills has suffered non-monetary damages as a direct result of Defendants' violations of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).  (Plaintiff Proposed Findings of Fact, ¶¶ 39-41, 43)

92.     The record evidence, including D-8 to D-11, <u>does not support</u> the contention in this paragraph.

93.     The record evidence supports the fact that Defendants solicited and/or are doing business with Sandhills's former customers in violation of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).  (Plaintiff Proposed Findings of Fact, ¶¶ 39-41, 43).

94.     Mr. Welch testified as to his belief concerning its former customer, Superior's business dealings with Defendants, contradicting the contentions contained in this paragraph.  (E.W. T2. 85:9-11).

95.     The record evidence supports the fact that Defendants solicited and/or are doing business with Sandhills's former customers in violation of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).  (Plaintiff Proposed Findings of Fact, ¶¶ 39-41, 43).

17

96.     Mr. Welch testified as to his belief concerning its former customer, Superior's business dealings with Defendants, contradicting the contentions contained in this paragraph. (E.W. T2. 85:9-11).

97.     The record evidence supports the fact that Sandhills has suffered and continues to suffer irreparable harm as a result of Defendants' violations of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4), and the Court's TRO.  (Plaintiff Proposed Findings of Fact, ¶¶ 39-41, 43).

98.     The record evidence supports the fact that Sandhills has suffered and continues to suffer irreparable harm as a result of Defendants' violations of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4), and the Court's TRO.  (Plaintiff Proposed Findings of Fact, ¶¶ 39-41, 43).

99.     The record evidence supports the fact that Facts Technology provides online auction solutions that directly compete with online auction solutions, including white label solutions, provided by Sandhills and its brands in violation of the restrictive covenants contained in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).  (Plaintiff Proposed Findings of Fact, ¶¶ 20-21, 31-38).

100.    The record evidence supports the fact that Facts Technology provides online auction solutions that directly compete with online auction solutions, including white label solutions, provided by Sandhills and its brands in violation of the restrictive covenants contained in in the APA Restrictive Covenant Agreement (P-3) and the Employee Restrictive Covenant Agreement (P-4).  (Plaintiff Proposed Findings of Fact, ¶¶ 20-21, 31-38).  The "hypothetical"

posited to Mr. Welch by Defendants' counsel are irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants by creating Facts Technology, a company that Mr. Garafola testified directly competes against Sandhills and its brands.  (*Id.*)

101.    Contrary to the contention in this paragraph, Mr. Welch testified that the restrictive covenants to which Mr. Garafola agreed in exchange for receiving more than $1.5 million prohibit Mr. Garafola from providing online auction solutions for industries in which Sandhills provides online auction solutions through its brands until July 2023.   (Plaintiff Proposed Findings of Fact, ¶¶ 16-19).

102.    The hypothetical that Defendants' counsel posited to Mr. Welch as reflected by the quoted testimony in this paragraph is completely irrelevant to the issues before the Court, *i.e.*, Defendants' violation of the restrictive covenants by creating Facts Technology, a company that Mr. Garafola testified directly competes against Sandhills and its brands. (Plaintiff Proposed Findings of Fact, ¶¶ 20-21, 31-38).

103.    The "facts" referenced in this paragraph are completely irrelevant to the issues before the Court, *i.e.*, Defendants' violations of the restrictive covenants by creating Facts Technology, a company that Mr. Garafola testified directly competes against Sandhills and its brands. (Plaintiff Proposed Findings of Fact, ¶¶ 20-21, 31-38).

104.    As an employee of Sandhills, Mr. Garafola was aware of and agreed to abide by Sandhills's Electronic Communications and Computer Policy, which prohibited Mr. Garafola from transmitting to any personal Gmail or other email account the numerous emails and hundreds of pages of Sandhills's confidential and proprietary business information for which it paid $1.5 million.  (Plaintiff Proposed Findings of Fact, ¶¶ 27; E.W. T1. 65:10-18, 72:10-13).

105.     As an employee of Sandhills, Mr. Garafola was aware of and agreed to abide by Sandhills's Electronic Communications and Computer Policy, which prohibited Mr. Garafola from transmitting to any personal Gmail or other email account the numerous emails and hundreds of pages of Sandhills's confidential and proprietary business information for which it paid $1.5 million.  (Plaintiff Proposed Findings of Fact, ¶¶ 27; E.W. T1. 65:10-18, 72:10-13).

106.     Mr. Welch testified that he was greatly concerned with the unauthorized transmission of hundreds of pages of Sandhills's confidential and proprietary business information to personal email accounts because "[t]here's talk of starting a new business, Equipmentfacts 2.0.  And then, in the weeks following, there's the raiding of all of Sandhills' intellectual property and intellectual property of Equipmentfacts."  (E.W. T1. 72:10-13).

## II.   <u>LEGAL ARGUMENT</u>

**A.   <u>Contrary to Defendants' Unsupported Contention Otherwise, Sandhills Has Demonstrated that It Is Suffering and Will Continue to Suffer Irreparable Harm Absent Injunctive Relief.</u>**

In their proposed conclusions of law, Defendants falsely claim that Sandhills has not "establish[ed] any irreparable harm outside of speculation and a possible risk[.]" *See* Defendants' Findings of Fact and Conclusions of Law, at p. 21.   This is simply not true and ignores compelling evidence that shows Sandhills has suffered and will continue to suffer irreparable harm absent injunctive relief due to Defendants' repeated and unlawful solicitations of its customers, as well as the loss of goodwill and reputational harm. *See* Plaintiff's Findings of Fact and Conclusions of Law, ¶¶ 33-38.   Indeed, this Court has already found "that, absent injunctive relief, Sandhills will continue to suffer the loss of goodwill and industry reputation" based on Defendants' e-mail solicitations to Sandhills's customers. *See* ECF No. 23, at p. 9.

Defendants' conclusory and unsupported claim that there is "no evidence" of irreparable harm blatantly ignores: (1) irrefutable documentary evidence showing Defendants' repeated and unlawful e-mail solicitations to Sandhills's customers; (2) certifications from several Sandhills's customers expressing confusion over Defendants' misleading solicitations; and (3) unrefuted testimony of Mr. Welch that, beyond revenue damages Sandhills has incurred from the customers it has already lost to Facts Technology, Sandhills has also suffered non-monetary damages, including, but not limited to, the loss of goodwill, harm to its reputation, and the loss of potential new customers. *See* Plaintiff's Findings of Fact, ¶ 43.   This irreparable harm has already occurred and will continue to occur if a preliminary injunction is not entered in this case. As such, Sandhills's irreparable harm is not merely "speculative" or a "possibility" as Defendants suggest, but rather, it is actual and concrete.

Further, the cases cited by Defendants for the proposition that Sandhills's showing of irreparable harm was "non-existent" are completely inapposite to this case.  In *Louis v. Bledsoe*, the plaintiff, a federal prisoner incarcerated in Pennsylvania, filed a civil rights action seeking a temporary restraining order and preliminary injunction for a single cell assignment because "his cell conditions constituted a substantial risk to him of serious bodily harm" since "he was currently housed with an aggressive homosexual inmate, who was sexually harassing him and engaging in sexually abusive  behavior."  438 F. App'x 129, 130 (3d Cir. 2011).  During the hearing on plaintiff's motion for a temporary restraining order, the plaintiff admitted "that, almost immediately after complaining, he was separated from his cellmate and transferred to the Special Management Unit ('SMU')" and thereafter, assigned a new cellmate. *Id.*  Accordingly, the court denied the plaintiff's motion for a temporary restraining order and/or preliminary injunction because he could not show irreparable harm based on the fact that he was immediately transferred away from his cellmate. *Id.* at 131.

Based on even a cursory review of the *Louis* case, it is abundantly clear that it has absolutely no application to the matter before this Court.  In fact, if anything, the stark contrasts between the defendant's actions in the *Louis* case after the plaintiff complained and Defendants' conduct here only further highlight the need for a preliminary injunction to prevent further irreparable harm to Sandhills.  Here, unlike the defendant in *Louis* who immediately acted to prevent any irreparable harm to the plaintiff, Defendants have instead acted in a manner to continue causing irreparable harm to Sandhills even after the filing of this case and **after the Court entered the temporary restraining order**. *See* Plaintiff's Findings of Fact, ¶¶ 39-40.

Moreover, *Acierno v. New Castle Cty.* is equally inapposite to this case. *See* 40 F.3d 645 (3d Cir. 1994).  In *Acierno*, the plaintiff, a real estate developer, filed constitutional claims

against New Castle County, Delaware and sought a preliminary injunction directing the County to issue plaintiff a building permit for the development of a shopping mall. *Id.* at 647.   In denying the plaintiff's application for a preliminary injunction, the court in that case found that any damages resulting from a violation of his constitutional rights (*i.e.*, the denial of a building permit) could be remedied by an award of money damages. *Id.* at 647.   As explained in Sandhills's Findings of Fact and Conclusions of Law, however, monetary damages alone will not suffice in this case where Defendants are unlawfully diverting Sandhills's customer relationships in violation of Garafola's restrictive covenants and destroying Sandhills's goodwill and reputation. *See* Plaintiff's Conclusions of Law, at p. 38.

Finally, the *Ecri v. McGraw-Hill, Inc.* case is also ***not*** applicable to Sandhills's current application before this Court.   809 F.2d 223 (3d Cir. 1987).   That case involved a publishing agreement between a non-profit health care corporation and a publishing company for various professions, including those in the healthcare industry. *Id.* at 224-25.   The *Ecri* court concluded that the plaintiff did not demonstrate irreparable harm because the agreement included a termination provision that was exercisable at the discretion of the defendant. *Id.* at 227-28.   Here, no such termination provision exists – rather, the evidence demonstrates that Garafola has repeatedly breached his restrictive covenants with Sandhills.

For these reasons, Defendants have failed to rebut Sandhills's clear showing of irreparable harm.

**B.**      **Defendants Fail to Legitimately Refute that Sandhills Has a Likelihood of Success on the Merits of Its Claims.**

**1.**      **Sandhills Is Likely to Succeed on the Merits of Its Breach of Contract Claims.**

Faced with the incontrovertible conclusion that Garafola repeatedly violated all of the restrictive covenants he entered into with Sandhills, Defendants fail to legitimately contest that

23

Sandhills is likely to succeed on its breach of contract claims against them and, instead, merely rehashes old arguments that this Court already rejected when deciding Sandhills's application for a temporary restraining order.

Critically important to Sandhills's application for a preliminary injunction is the fact that Defendants completely fail to dispute that Garafola, as Facts Technology, breached his non-solicit restrictive covenants. Nor do Defendants dispute that the non-solicit restrictive covenants are enforceable. In fact, during the preliminary injunction hearing, Garafola admitted that he both solicited and is doing business with current and former Sandhills customers in clear violation of these restrictive covenants. *See* Plaintiff's Findings of Fact, ¶¶ 39-42. As such, Defendants have conceded both that the non-solicitation restrictive covenants are enforceable and they breached those agreements through their e-mail solicitations to Sandhills's customers and by doing business with Sandhills's customers.

Unable to contest that they breached the non-solicitation restrictive covenants, Defendants instead solely argue that Sandhills is not likely to succeed on the merits of its claims for breach of the non-compete restrictive covenants. Specifically, Defendants' purported conclusions of law relating to Sandhills's breach of contract claims appear to be limited to the following: (1) the five-year APA non-compete restrictive covenant is unreasonable; (2) Garafola, through Facts Technology, did not violate his non-compete restrictive covenants because Sandhills does not sell a software license unless it runs the auction; and (3) the restrictive covenants should somehow be nullified because Sandhills allegedly violated his employment agreement.[1] *See* Defendants' Findings of Fact and Conclusions of Law, at pp. 22-24. As this Court has previously held and for the reasons set forth herein, these arguments lack merit.

---

[1] Although it is not clear based upon their proposed conclusions of law, to the extent Defendants are now claiming that the restrictive covenants are ambiguous and should somehow be construed against Sandhills (purportedly as the

a.    The APA Non-Compete Restrictive Covenant Is Reasonable and Enforceable.

In their proposed findings of fact and conclusions of law, Defendants, without citation to any prevailing legal authority,[2] appear to suggest that the five-year non-compete provision in the APA restrictive covenant should not be enforced because it is "overly broad and unreasonable."[3] Yet, Defendants have failed to cite to any findings of fact from the record (or legal authority) that would refute this Court's prior finding that the scope of the APA restrictive covenants are "appropriate and not overly broad given the parties' business and the terms of the parties' purchase agreement." *See* ECF No. 23, at p. 7.  Indeed, Defendants cannot overcome the prevailing case law cited by Sandhills, which holds that a five-year non-compete restrictive covenant that is ancillary to the sale of a business is enforceable. *See* Plaintiff's Findings of Fact and Conclusions of Law, at pp. 23-26.

Regardless, and contrary to Defendants' unsupported conclusion otherwise, the APA restrictive covenant does not preclude Garafola from making a living, nor does it restrict him from working in any business in the entire country that Sandhills is involved in or planning on getting involved in.  Rather, ancillary to the sale of Equipmentfacts for $1.5M, Garafola agreed that, for a period of five years from the date of the APA, he would not provide any online auctions related services or solutions within any of the industries in which Sandhills's brands

---

drafter), these arguments are not supported by the record evidence, nor any testimony from the preliminary injunction hearing. Rather, there was extensive testimony during the preliminary injunction hearing regarding the negotiations over and the scope of the restrictive covenants, as well as the meaning of those terms. *See* Plaintiff's Findings of Fact, ¶¶ 16-19. Regardless, Defendants' purported argument that some unidentified ambiguities in the restrictive covenants must be construed against Sandhills would still fail because the APA restrictive covenant agreement expressly provides that "this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement." *See* D-3, ¶ 12.

[2] Defendants' general citations to a law review article and non-specific case law for the legal standard in no way support their baseless conclusion that the APA non-compete restrictive covenant should be unenforceable.

[3] Defendants fail to contest and therefore must concede that the terms of the Employee Restrictive Covenant Agreement are reasonable and enforceable.

offer online auction services or solutions. *See* Plaintiff's Findings of Fact, ¶ 17.  That is entirely reasonable under the circumstances.

> b.  The Record Evidence Establishes that Garafola, as Facts Technology, Breached the Non-Compete Restrictive Covenants.

Again without providing any legal authority whatsoever, Defendants attempt to conclude that Garafola did not breach his non-compete restrictive covenants with Sandhills.  Even ignoring their complete failure to support their conclusions of law with any legal authority, Defendants' conclusion that they are not competing with Sandhills is directly contradicted by the record evidence. *See* Plaintiff's Findings of Fact, ¶¶ 34-38.  Specifically, Defendants appear to be claiming that they did not breach the non-compete restrictive covenants because Facts Technology sells software and Sandhills does not sell software licenses unless it runs the auction. *See* ECF 53, at pp. 22-23.

Despite now claiming that Garafola somehow did not breach his non-compete restrictive covenants, the testimony from the preliminary injunction hearing made clear that Sandhills and Facts Technology (who Garafola admitted is his alter ego) both provide online auction solutions through industry-specific brands and online auction services using their respective auction software. *Id.* at ¶¶ 34-38.  In fact, Garafola admitted that Sandhills and Facts Technology "both have online software" which they use to provide various types of online auction solutions to their customers, including a white label solution. *Id.* at ¶¶ 36-37.  Mr. Welch similarly provided testimony confirming that Facts Technology and its brands (including but not limited to AuctioneerFacts) are directly competing against Sandhills. *Id.* at ¶ 39.  Therefore, Defendants' attempt to claim that Garafola did not breach his non-compete restrictive covenants must be rejected.

> c.  Defendants Have Provided No Evidence to Support a
>     Finding that Sandhills Materially Breached His
>     Employment Agreement – Let Alone Any Legal Authority
>     to Nullify His Restrictive Covenants.

In their purported conclusions of law, Defendants once again attempt to claim, without any citations, that Sandhills is not entitled to injunctive relief because it breached Garafola's employment agreement.  Defendants claim that Sandhills breached the employment agreement by: (1) failing to provide Garafola with a job description; and (2) unilaterally terminating Garafola's employment after Sandhills learned he had engaged in, and was preparing to engage in, unlawful activities. *See* Defendants' Proposed Findings of Fact and Conclusions of Law, p. 24.  Incredibly, and despite making this unsupported argument on at least one prior occasion, Defendants have still failed to cite to any record evidence or legal authority to support their claim.

Regardless, whether Sandhills ever provided Garafola with a job description, if required under the terms of his employment agreement (as incorrectly suggested by Defendants), is not a material breach of the employment agreement that precludes Sandhills from seeking equitable relief under both the APA Restrictive Covenant Agreement and the Employee Restrictive Covenant Agreement.  Furthermore, Sandhills did not "unilaterally remove" Garafola from his position in violation of any provision of his employment agreement.  Rather, Sandhills terminated Garafola for planning to compete against it while employed by Sandhills and for transmitting Sandhills's confidential and proprietary documents and information to non-Equipmentfacts/non-Sandhills e-mail accounts. *See* Plaintiff's Findings of Fact, ¶¶ 22-30.

As such, any attempt by Defendants to claim that all of Garafola's restrictive covenants (even those in separate agreements outside of the context of his employment with Sandhills) are somehow "nullified" is entirely baseless.

### 2. Sandhills Is Likely to Succeed on the Merits of Its Misappropriation of Trade Secrets Claims.

In their proposed conclusions of law, Defendants frivolously attempt to argue that Sandhills failed to show a likelihood of success on the merits of its misappropriation of trade secrets claim by suggesting to this Court that Garafola had innocently emailed hundreds of pages of confidential and proprietary documents and information to his personal Gmail account, his wife's personal email, and an unauthorized Dropbox account. *See* Defendants' Proposed Findings of Fact and Conclusions of Law, pp. 24-25. However, as the evidence clearly showed, Garafola misappropriated Sandhills's confidential and proprietary documents and information, (including, but not limited to, bidders lists, target lists, and confidential manuals, templates, and other materials) ***after*** he had discussions with one of Sandhills's direct competitors and told the President of that company that he could start an online auction solutions business to compete against Sandhills. *See* Plaintiff's Findings of Fact, ¶¶ 22-28. If this were somehow not enough to show that Garafola was in no way acting innocently when he was sending hundreds of pages of Sandhills's confidential and proprietary documents and information to personal email addresses, the evidence also shows that Garafola and his son (who was also a Sandhills employee) had either wiped or mass deleted files from their company-issued work computers. *Id.* at ¶ 29. At the very least, any attempt by Defendants to even suggest that "there was nothing nefarious about" Garafola's conduct or that he was merely trying to retain customers on behalf of Equipmentfacts would be disingenuous.

Notwithstanding the above baseless and wholly unsupported conclusion alleged by Defendants, Sandhills has demonstrated that it is likely to succeed on the merits of its misappropriation of trade secrets claims for the reasons set forth in its Proposed Findings of Fact of Conclusions of Law. *See* Plaintiff's Conclusions of Law, pp. 32-33.

3.      **Sandhills Is Likely to Succeed on the Merits of Its Tortious Interference Claims.**

In their proposed conclusions of law, Defendants contend that Sandhills's tortious interference claims are "speculative" because there is no evidence of a lost business relationship. *See* Defendants' Proposed Findings of Fact and Conclusions of Law, p. 25.  This is simply not true.  Indeed, there is ample evidence before this Court showing that: (1) Garafola, as Facts Technology, knowingly and intentionally solicited many customers of Sandhills in violation of his restrictive covenants; (2) Garafola, as Facts Technology, has done or is doing business with several customers of Sandhills; and (3) Sandhills has lost at least two accounts to Garafola/Facts Technology. *See* Plaintiff's Findings of Fact, ¶¶ 39-41.  Simply put, there may not be a more compelling set of facts demonstrating that Sandhills is likely to succeed on the merits of its tortious interference claims against Defendants.

For these reasons, as well as those set forth in Sandhills's Findings of Facts and Conclusions of Law, Sandhills respectfully requests that the Court find that it has shown a likelihood of success on the merits of its tortious interference claims against both Garafola and Facts Technology.

C.      **Defendants' Claim that the Balance of Harms Weighs in Their Favor Is Without Merit.**

As previously set forth by Sandhills and held by this Court in its prior decision partially granting Sandhills's application for a temporary restraining order, Sandhills has demonstrated that the balance of harms weighs in its favor and that injunctive relief would serve the public interest by honoring the parties' agreements. *See* ECF No. 23, p. 9 and Plaintiff's Findings of Fact and Conclusions of Law, p. 39.  In fact, the evidence and testimony at the preliminary injunction hearing further demonstrated that Sandhills is merely asking the Court to enforce and

for Garafola to abide by the restrictive covenants that he agreed to and for which Sandhills paid him more than $1.5 million. *See* Plaintiff's Findings of Fact ¶ 43.

Nonetheless, Garafola now claims that, if the Court enters a preliminary injunction extending its temporary restraining order and enforcing the terms of the parties' agreements, he will not be able to provide for his family and will be submerged by attorneys' fees and costs as a result of this litigation.  His claims miss the point however.  First, Garafola's claim that he cannot provide for his family is belied by the fact that he received $1.5 million from Sandhills for the sale of Equipmentfacts and that the restrictive covenants were bargained for and essential to the APA.  Second, Sandhills is not seeking to prevent Garafola from earning a living, so long as he abides by his restrictive covenants (which he has thus far refused and failed to do).  Further, any need for Garafola to incur attorneys' fees and costs was precipitated by his blatant and repeated violations of his restrictive covenants – thereby forcing Sandhills to institute this action to enforce the terms of the parties' agreements.

Accordingly, the Court should find that the balance of harms weighs in Sandhills's favor and that the public interest will be served by entering a preliminary injunction and enforcing the parties' agreements.

D.       **There Is No Basis to Require Sandhills to Pay Garafola's "Lost Income, Attorneys' Fees and Costs."**

Without providing any legal or contractual basis, Defendants ask this Court to "require Sandhills to pay Garafola's lost income, attorneys' fees and costs for defending this frivolous injunction application."  Defendants' Conclusions of Law, p. 28.  At the outset, this request must be denied because Sandhills's application for a preliminary injunction against Defendants is clearly not frivolous for the reasons shown above and those set forth in its Findings of Fact and Conclusions of Law.  Further, not only is Sandhills's application not frivolous in any way, but

this Court found that Sandhills's action has merit based on the fact that it entered a temporary restraining order against Garafola.  Regardless, Defendants have failed to comply with the requirements of Rule 11 of the Federal Rules of Civil Procedure, and therefore, their request must be denied for that reason alone. *See* Fed. R. Civ. P. 11(c)(2).  As there are absolutely no grounds for the relief requested by Defendants, the Court should respectfully deny Defendants' request.

In fact, the only basis for either party to recover their attorneys' fees pursuant to Sandhills's application for a preliminary injunction is to require Garafola to pay Sandhills's reasonable attorneys' fees and out-of-pocket expenses incurred instituting this action to enforce the APA Restrictive Covenant Agreement. *See* P-3, ¶ 8.  By signing the APA Restrictive Covenant Agreement, Garafola agreed:  "If [Sandhills] institutes legal action to enforce the provisions of this Agreement, in addition to any and all other rights or remedies which [Sandhills] may obtain in any such litigation, [Sandhills] shall also be entitled to recover from [Garafola] its reasonable attorneys' fees and out-of-pocket expenses incurred in such litigation." *Id.*  As such, not only must the Court deny Defendants' request for an award of attorneys' fees and costs, but the Court should order Garafola to pay Sandhills's reasonable attorneys' fees and out-of-pocket expenses incurred in bringing this application for a temporary restraining order and a preliminary injunction, as provided for by the express terms of the APA Restrictive Covenant Agreement.

## III.   <u>CONCLUSION</u>

For the foregoing reasons as well as those set forth in Sandhills's Findings of Fact and Conclusions of Law, Sandhills respectfully requests that this Court enter a Preliminary Injunction against Garafola and Facts Technology and for such other, further, and different relief

as this Court deems just and equitable.  Specifically, Sandhills respectfully submits that the Court should issue a Preliminary Injunction:

(a)      restraining Garafola from directly or indirectly competing with Sandhills, as defined in the APA, the APA Restrictive Covenant Agreement and the Employee Restrictive Covenant Agreement;

(b)      restraining Facts Technology and all of its brands that provide online auction solutions, including the software licenses and white label offerings available through AuctioneerFacts, from directly or indirectly competing with Sandhills's online auction solutions, including the online auction solutions available through its brands;

(c)      restraining Garafola and Facts Technology from directly or indirectly soliciting for Garafola, or any another business that is competitive with Sandhills's brands, any customers, clients or accounts of Sandhills;

(d)      restraining Garafola and Facts Technology from directly or indirectly interfering with any customer, client or account of Sandhills to sever or alter the relationship of such customer, client or account with Sandhills;

(e)      requiring Garafola to immediately return Sandhills's and Equipmentfacts's Proprietary Information (as defined in the APA, the APA Restrictive Covenant Agreement and the Employee Restrictive Covenant Agreement), including but not limited to, emails containing Proprietary Information, manuals, PowerPoint presentations, videos, customer lists and contact lists, bidders lists and contact lists, and auctioneer lists and contact lists.  Sandhills reserves its right to seek a forensic analysis of all email accounts and electronic devices maintained, owned and/or possessed by Garafola and his wife, Maureen Garafola.  Sandhills also reserves the right

to seek spoliation sanctions, including, but not limited to, recoupment of the cost of any forensic analysis, as well as an adverse inference against Garafola; and

(f)     awarding Sandhills its reasonable attorneys' fees and out-of-pocket expenses incurred in connection with the Temporary Injunction and Preliminary Injunction applications, pursuant to paragraph 8 of the Noncompetition, Noninterference and Confidentiality Agreement, signed by Lawrence Garafola and dated July 16, 2018.  Sandhills will submit an affidavit of attorneys' fees and out-of-pocket expenses by a date set by the Court.

Respectfully submitted,

By:  *s/ John D. Miller, III*
     John D. Miller, III
     Justin E. Condit
     BRESSLER, AMERY & ROSS, P.C.
     325 Columbia Turnpike
     Florham Park, NJ 07932

     and

     KOLEY JESSEN PC, LLO
     Margaret C. Hershiser, Neb. #19545
     (*pro hac vice* motion to be filed)
     Patrice D. Ott, Neb. #24435
     (*pro hac vice* motion to be filed)
     One Pacific Place, Suite 800
     1125 South 103rd Street
     Omaha, NE 68124-1079
     (402) 390-9500
     (402) 390-9005 (facsimile)
     Margaret.hershiser@koleyjessen.com
     Patrice.ott@koleyjessen.com

     *Attorneys for Plaintiff Sandhills Global, Inc.*

DATED:  March 12, 2020