**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SANDHILLS GLOBAL, INC., | Civil Action No. 3:19-cv-20669 |
| Plaintiff, | |
| v. | |
| LAWRENCE GARAFOLA, individual, and FACTS TECHNOLOGY LLC, a New Jersey limited liability company, | |
| Defendants. | |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

---

BRESSLER, AMERY & ROSS, P.C.
John D. Miller, III
Justin E. Condit
325 Columbia Turnpike
Florham Park, NJ 07932
(973) 514-1200
(973) 514-1660 (facsimile)
*Attorneys for Plaintiff Sandhills Global, Inc.*

Of Counsel:
    John D. Miller, III

On the Brief:
    John D. Miller, III
    Justin E. Condit

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF RELEVANT BACKGROUND FACTS ...............................3

LEGAL ARGUMENT........................................................................................9

    POINT I - SANDHILLS IS A PREVAILING PARTY ENTITLED TO ATTORNEY'S FEES PURSUANT TO THE AGREED UPON CONTRACT.........................................9

        a.  Sandhills is considered a prevailing party. ......................................9

        b.  The Agreement between the parties expressly provides for attorney's fees and costs. .................................................................13

    POINT II - SANDHILLS' COUNSEL'S HOURLY RATES ARE REASONABLE. ..........13

        a.  The rates are equivalent to Sandhills' counsel's usual billing rate....................................................................................................16

        b.  The rates are reasonable in comparison to attorneys offering similar services.................................................................................16

        c.  The rates are reasonable based on the USAO Attorney's Fees Matrix 2015-2020. ..........................................................................17

        d.  The rates are reasonable based on the Community Legal Services of Philadelphia fee schedule. ..................................................19

    POINT III - THE NUMBER OF HOURS EXPENDED BY SANDHILLS' COUNSEL IS REASONABLE. ....................................................................................20

        a.  Table reflecting tasks by respective counsel.................................20

        b.  The hours requested are neither unnecessary nor excessive...........................21

    POINT IV - THE LODESTAR CALCULATION. ..............................................22

CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Andrade v. Arby's Rest. Grp., Inc.,
   225 F. Supp. 3d. 1115 (9th Cir. 2016) ......................................................18

Apple Corps., Ltd. v. Intl Collectors Soc'y,
   25 F. Supp. 2d 480 (D.N.J. 1998) ............................................................17

Armur Realty LLC v. Banco do Brasil,
   2011 U.S. Dist. LEXIS 151677, *13 (D.N.J. December 12, 2011). .........................22

Certain Underwriters at Lloyd's v. AdvanFort Co.,
   2019 U.S. Dist. LEXIS 176192 (4th Cir. October 9, 2019).................................18

Empower Our Neighborhoods v. Guadagno,
   453 N.J. Super. 565 (App. Div. 2018) .................................................9, 14

Furst v. Einstein Moomjy, Inc.,
   182 N.J. 1 (2004) ........................................................................21

Grow Co., Inc. v. Chokshi,
   424 N.J. Super. 357 (App. Div. 2012) .....................................................14

Hensley v. Eckerhart,
   461 U.S. 424 (1983)......................................................................21

IMS Health Corp. v. Schneider,
   901 F. Supp. 2d. 172 (1st. Cir. 2012) ...................................................18

Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,
   426 F.3d 694 (3d. Cir. 2005).........................................................18, 21

Jones v. Hayman,
   418 N.J. Super. 291 (App. Div. 2011) .................................................9, 10

Lieb v. Topstone Indus., Inc.,
   788 F.2d 151 (3rd Cir. 1986) ............................................................13

Machado v. Law Offices of Jeffrey H. Ward,
   Civil Action No. 14-7401 (MAS) (TJB), 2017 U.S. Dist. LEXIS 102869
   (D.N.J. June 30, 2017) ...........................................................19, 21, 22

Packard-Bamberger & Co., Inc. v. Collier,
   167 N.J. 427 (2001) ......................................................9, 11, 12, 13, 14

People Against Police Violence v. City of Pittsburgh,
520 F.3d 226 (3d Cir. 2008)...................................................................10, 12

Pickett v. Sheridan Health Care Ctr.,
664 F.3d. 632 (7th Cir. 2011) .........................................................................18

Pub. Int. Research Grp. Of N.J., Inc. v. Windall,
51 F.3d 1179 (3d Cir. 1995)......................................................................16, 17

Rendine v. Pantzer,
141 N.J. 292 (1995) .........................................................................................19

Rode v. Dellarciprete,
892 F.2d 1177 (3d Cir. 1990)....................................................................17, 21

Singer v. State,
95 N.J. 487 (1984) .....................................................................................15, 17

Smith v. Hudson County Register,
422 N.J. Super. 387 (App. Div. 2011) ............................................................10

**Rules**

L. Civ. R. 5.3(c)(4)............................................................................................20

**Other Authorities**

*Attorney Fees, Community Legal Services of Philadelphia, available at*
https://clsphila.org/about-community-legal-services/attorney-fees/.......................19

*Attorney's Office Attorney's Fees Matrix for 2015-2020*
(https://www.justice.gov/usao-dc/page/file/1189846/download)...........................17

Sandhills Global, Inc. v. Lawrence Garafola,
Civil Action No. 19-20669 (MAS) (TJB), Memorandum Opinion..............................5, 11, 21

## PRELIMINARY STATEMENT

Plaintiff, Sandhills Global Inc. ("Sandhills"), respectfully submits this Brief in Support of its Motion for Award of Attorneys' Fees and Costs as authorized by the express terms of the restrictive covenant agreements entered into by Defendant, Lawrence Garafola ("Garafola").  For the reasons detailed herein, Plaintiff respectfully submits that it is entitled to an award of attorneys' fees and costs/expenses totaling $264,669.81 because it has prevailed in its efforts to secure Defendants' compliance with the restrictive covenants agreements.  Moreover, the requested fees and costs are both reasonable in hourly rates and hours spent given that Garafola unnecessarily protracted the length and expanded the scope of the litigation that resulted in Plaintiff incurring (and paying) the substantial amount of attorneys' fees and costs at issue in this motion.

From the inception of this litigation to the present, Plaintiff has simply sought to have Garafola abide by the restrictive covenant agreements he entered into with Plaintiff – nothing more and nothing less.  Despite his clear obligations, Garafola has fought tooth and nail to get out from under his agreements in order to continue his unlawful competition against Plaintiff.  This has forced Plaintiff to litigate for more than six (6) months what should have been a straightforward and quick temporary and preliminary restraints issue. This includes Garafola's position concerning the type of business he is conducting morphing from a full array of online auction services to a purportedly narrowed white labeling online auction solution – all of which are prohibited by Garafola's restrictive covenant agreements.  Garafola's ever changing business is a transparent attempt to continue unlawfully competing against Sandhills and Equipmentfacts, the business Garafola sold to Sandhills for which he received $1.5 million.  Ultimately, the Court agreed with Plaintiff's positions and enforced the restrictive covenant agreements by first entering a temporary restraining order ("TRO") against Garafola and then entering the requested preliminary injunction order ("PI Order") against Garafola and his company, Facts Technology, thereby awarding

Plaintiff all of the relief sought from the beginning of litigation. To secure this victory, Plaintiff incurred (and paid) substantial attorneys' fees and costs in having to engage in protracted and unnecessary litigation caused by Garafola's tenuous factual and legal positions.

Garafola and Facts Technology made an additional, yet futile effort to stave off a decision in Plaintiff's favor when they filed a "Hail Mary" motion to dismiss the Verified Complaint, including the request for injunctive relief, shortly before the Court entered the TRO against Garafola. Even after the Court issued the TRO and later the PI Order, Defendants pressed forward with the motion to dismiss refusing to withdraw it despite the Court's decisions in Plaintiff's favor. Defendants' last ditch motion was rejected in all material respects by the Court. Yet, Plaintiff was forced once again to incur attorneys' fees and costs in successfully opposing Defendants' ill-conceived and baseless motion.

The saga of the restrictive covenant stage of this litigation began in November 2019 and continued through June 2020 when the parties fully briefed the last remaining restrictive covenant issue involving white label auction solutions. That journey took place in various stages, which is how Plaintiff identifies the work performed resulting in the attorneys' fees and costs incurred. The stages are: (1) investigation, preparation and filing for the Verified Complaint; (2) the TRO stage, including the briefing, related submissions and argument before the Court; (3) the preliminary injunction stage including pre-hearing briefing, two days of in-person evidentiary hearings in New Jersey attended by Plaintiff's out of state representatives, Evan Welch (witness) and Alex Essay (in-house counsel); (4) preparation of the post-hearing findings of fact and conclusions of law ("FF&CL") as well as the response to Defendants' FF&CL; (5) post-hearing briefing on the white label auction solution issue; and (6) Plaintiff's successful opposition to Defendants' motion to dismiss the Verified Complaint (including the request for injunctive relief).

## STATEMENT OF RELEVANT BACKGROUND FACTS

1.     This lawsuit stems from the unlawful conduct of Garafola, who, less than a year after selling his business, Equipmentfacts, to Sandhills for $1.5 million, and during the pendency of a related lawsuit with Sandhills (*Sandhills Global, Inc. v. Lawrence Garafola, Sr., et al.,* Civil Action No. 19-17225), formed Facts Technology – a direct competitor – to solicit business and customers away from Sandhills in a clear and blatant violation of various restrictive covenants, statutes, and common law.   *See* Declaration of John D. Miller, III, Esq. ("Miller Decl."), ¶ 15, submitted in support of the Motion for Attorneys' Fees and Costs.

2.     A more specific factual background supporting the claims against Garafola and Facts Technology is set forth in Plaintiff's FF&CL (ECF Doc. No. 54), which contains the relevant facts, agreements, key documents and witness testimony, which are incorporated herein by reference.  *See* Miller Decl., ¶ 16.

**A.     Stage 1 – Investigation, preparation and filing of the Verified Complaint with the supporting brief requesting a TRO (attorney's fees incurred and paid - $38,144.00)**

3.     On or about November 25, 2019, the instant action was initiated with the filing of the Verified Complaint, which included claims against Garafola of breach of contract, misappropriation of trade secrets, violation of the Defend Trade Secrets Act, breach of duty of loyalty, interference with a business relationship and/or expectancy ("tortious interference"), and civil conspiracy. In addition, the Verified Complaint included claims of tortious interference and civil conspiracy against Facts Technology. The Verified Complaint sought in substantial part to secure Garafola's compliance with the restrictive covenants contained in the relevant agreements he signed with Plaintiff and to restrain Garafola's newly created competing business, Facts Technology, from competing against Plaintiff in violation of Garafola's restrictive covenants.  *See* Miller Decl., ¶ 17.

4.      Plaintiff incurred $38,144.00 in attorneys' fees for this stage of the litigation and Plaintiff has paid all of those fees.  *See* Miller Decl., ¶ 18.

**B.     Stage 2 – TRO briefing and in person oral argument resulting in the TRO being entered against Garafola (attorneys' fees incurred and paid - $38,682.50)**

5.      Simultaneously upon filing the action, Sandhills moved for a TRO against Defendants. Defendants filed opposition and Plaintiff filed a reply brief.  The Court held in-person oral argument on December 11, 2019. On December 16, 2019, the Court granted in part and denied in part the TRO and temporary restraints were issued against Garafola, pending a preliminary injunction hearing. (Letter Opinion & Order, December 16, 2019 (ECF Doc. No. 23)). *See* Miller Decl., ¶ 19.

6.      Plaintiff incurred $38,682.50 in attorneys' fees for this successful stage of the litigation and Plaintiff has paid all of those fees.  *See* Miller Decl., ¶¶ 20, 42.

**C.     Stage 3 – Preliminary injunction stage, including pre-hearing briefing, in-person evidentiary hearings (attorneys' fees incurred and paid - $127,370.00)**

7.      Prior to the scheduled in-person preliminary injunction hearing, at the Court's direction, Plaintiff filed a brief and a reply brief in support of the request for the preliminary injunction, which Defendants opposed in writing. *See* Miller Decl., ¶ 21.

8.      The in-person evidentiary hearings were held on February 6, 2020 and February 21, 2020. Plaintiff's Nebraska representatives, Evan Welch (witness) and Alex Essay (in-house counsel), flew to New Jersey to attend the hearings.  Messrs. Welch and Essay stayed in New Jersey in order to attend the hearings.  *See* Miller Decl., ¶ 22.

9.      Throughout the proceedings, the Court received documentary evidence heard live testimony of two witnesses, Garafola and Mr. Welch.  *See* Miller Decl., ¶ 23.

10.     Plaintiff incurred $127,370.00 in attorney's fees and costs (travel related costs) for this stage of the litigation and Plaintiff has paid all of those fees.  *See* Miller Decl., ¶¶ 24, 42.

**D.    Stage 4 – Post-hearing submission of proposed FF&CL resulting in the issuance of the preliminary injunction against both Defendants (attorney's fees incurred and paid - $15,545.00)**

11.    At the conclusion of the February 2020 evidentiary hearings, at the Court's direction, the parties prepared and submitted their respective proposed FF&CL, including responses to the each other's FF&CL. The matter was fully briefed on March 12, 2020. *See* Miller Decl., ¶ 25.

12.    On April 10, 2020, the Court signed an Order granting preliminary injunctive relief ("PI Order") (ECF Doc. Nos. 63 and 64) against Garafola and Facts Technology, the complete injunctive relief sought by the Verified Complaint. *See* Miller Decl., ¶ 26.

13.    Plaintiff incurred $15,545.00 in attorney's fees and costs for this successful stage of the litigation and Plaintiff has paid all of those fees. *See* Miller Decl., ¶¶ 27, 42.

**E.    Stage 5 – Post-hearing white label submissions (attorney's fees incurred and paid - $31,875.00)**

14.    In its opinion granting the preliminary injunction, the Court noted that Garafola "wishes to 'conduct business as Facts Technology, Auctioneer Facts, and Dealer Facts by selling software licenses as a true white label service' without providing any other services." Sandhills Global, Inc. v. Lawrence Garafola, Civil Action No. 19-20669 (MAS) (TJB), Memorandum Opinion, 24 (ECF Doc. No. 63).   After recognizing the existence of that newly minted business, the Court indicated that "the parties have not provided appropriate briefing and substantiating documentation to support their positions." Id. at 25. For those reasons, the Court did not make a ruling on that argument and directed the parties to submit briefing and supporting documentation on the issue. *See* Miller Decl., ¶ 28.

15.    On May 29, 2020, Plaintiff submitted supplemental FF&CL addressing the white label issue (ECF Doc. No. 70).   On June 10, 2020, Defendants filed opposition to Plaintiff's

supplemental FF&CL (Docket No. 73).  The white label issue was fully briefed as of June 10, 2020 and the parties await the Court's ruling.  *See* Miller Decl., ¶ 29.

16.     Plaintiff incurred $31,875.00 in attorney's fees and costs for this stage of the litigation and Plaintiff has paid all of those fees.  *See* Miller Decl., ¶¶ 30, 42.

**F.     Stage 6 – Defendants' unsuccessful motion to dismiss the Verified Complaint including the injunctive relief requested (attorney's fees incurred and paid - $5,175.00).**

17.     On December 4, 2019, a few days before the Court entered the TRO, Defendants filed a Motion to Dismiss the Verified Complaint, including the request for injunctive relief (ECF Doc. No. 14).  *See* Miller Decl., ¶ 31.

18.     Despite the fact that the Court entered its TRO a few days later on December 16, 2019 (ECF Doc. No. 23), Plaintiff was forced to file opposition to the motion because Defendants did not withdraw it even in light of the Court's TRO.  Thereafter, Defendants filed their reply submission in further support of the motion.  *See* Miller Decl., ¶ 32.

19.     While the Motion to Dismiss was pending, Plaintiff secured another victory when the Court issued its PI Order on April 10, 2020 (ECF Doc. Nos. 63 and 64) imposing preliminary restraints against Garafola and Facts Technology, the exact relief sought by Plaintiff from the beginning of the litigation.  Even after suffering this defeat, Defendants pushed forward with the Motion to Dismiss failing to dismiss it even in light of the PI Order.  *See* Miller Decl., ¶ 33.

20.     After carefully considering the parties' submissions and without oral argument, by Order dated July 23, 2020, the Court dismissed only one claim of the Verified Complaint without prejudice (Claim Nine – civil conspiracy against Facts Technology) (ECF Doc. Nos. 78 and 80).  The additional eight claims remain intact including the injunctive relief sought and obtained by Plaintiff against Garafola and Facts Technology.  *See* Miller Decl., ¶ 34.

21.     Again, Defendants never withdrew the motion even though the Court's prior rulings, including both the December 16, 2019 TRO and April 10, 2020 PI Order, all but telegraphed the Court's ultimate decision denying the motion in substantial part, including the request to dismiss the injunctive relief.  *See* Miller Decl., ¶ 35.

22.     Plaintiff incurred $5,175.00 in attorney's fees and costs for this successful stage of the litigation and Plaintiff has paid all of those fees.  *See* Miller Decl., ¶¶ 36, 42.

**G.     The Asset Purchase Agreement Restrictive Covenant Agreement expressly authorizes the award of the requested attorney's fees and expenses incurred and paid by Plaintiff in the total amount of $256,791.50 (fees) and $7,878.31 (costs/expenses)**

23.     The Non-competition, Non-interference and Confidentiality agreement Garafola entered into in connection with the Asset Purchase Agreement ("APA Restrictive Covenant Agreement") authorizes this Court to award reasonable attorney's fees and expenses incurred by Plaintiff in successfully pursuing the injunctive relief at issue in this litigation:

> <u>Enforcement.</u> Seller's Sole Member acknowledges that the covenants, agreements, understandings and restrictions contained in this Agreement are necessary, fundamental and required for the protection of Purchaser and the goodwill of Seller purchased by Purchaser as part of the Acquisition, and relate to matters which are of a special, unique and extraordinary character that gives each of the covenants, agreements, understandings and restrictions a special, unique and extraordinary value. Seller's Sole Member also acknowledges that a breach of any covenant or restriction contained in this Agreement will result in irreparable harm and damage to Purchaser. Accordingly, Seller's Sole Member expressly agrees that, in the event of a breach or threat of a breach of any provision of this Agreement by Seller's Sole Member, the Purchaser's remedies at Law will be inadequate, and in each such event, the Purchaser will be entitled to an injunction or other similar relief to prevent any breach of this Agreement and to enforce specifically the provisions of this Agreement, in addition to money damages sustained by Purchaser resulting from Seller's Sole Member's breach or threatened breach of this Agreement, and in addition to any other remedy to which Purchaser may be entitled at Law or in equity. **<u>If Purchaser institutes legal action to enforce the provisions of this Agreement</u>**, in addition to any and all other rights or remedies which Purchaser may obtain in any such litigation, **<u>Purchaser shall also be entitled to recover from the Seller's Sole Member its reasonable attorneys' fees and out-of-pocket expenses incurred in such litigation</u>**.

Section 8 (emphasis added) of <u>Exhibit</u> 3 attached to Miller Decl.; *see also* Miller Decl., ¶ 37.

24.     As evidence from the relief obtained, Plaintiff is the prevailing party in this litigation because it was successful in securing Defendants' compliance with the restrictive covenant agreements, the breach of which formed the basis for the litigation and injunction proceedings.  *See* Miller Decl., ¶ 38.

25.     Sandhills incurred and has fully paid a total of $256,791.50 in attorneys' fees in connection with its successful pursuit of the injunctive relief imposed by the Court.  *See* Miller Decl., ¶ 39.

26.     Sandhills also incurred and paid $7,878.31 in out-of-pocket expenses in connection with the Stages 1 through 6 of the litigation, including travel-related expenses related to Messrs. Essay and Welch attending the preliminary injunction hearings in New Jersey.  *See* Miller Decl., ¶ 40.

27.     The attorneys' fees and cost are both reasonable in hourly rates and the amount of time spent based on Defendants protracting the length and scope of the litigation issues when the restrictive covenant agreement requirements are clear and unambiguous, which would have resulted in quick and streamlined injunction proceedings but for the tenuous and unsuccessful positions taken by Defendants throughout every stage of this litigation.  Invoices with detailed entries supporting the attorneys' fees and out-of-pocket expenses incurred and paid by Sandhills are attached to Miller Decl. as <u>Exhibit</u> 4 (Bressler invoices (under seal)), <u>Exhibit</u> 5 (Koley Jessen invoices (under seal)) and <u>Exhibit</u> 6 (declaration of Alexander Essay regarding travel related expenses).  *See* Miller Decl., ¶¶ 41-43.

**LEGAL ARGUMENT**

**POINT I - SANDHILLS IS A PREVAILING PARTY ENTITLED TO ATTORNEY'S FEES PURSUANT TO THE AGREED UPON CONTRACT.**

### a. Sandhills is considered a prevailing party.

Under New Jersey law, a prevailing party in a lawsuit may recover attorney's fees and costs if expressly provided by a contract. *See* Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 440 (2001). Plaintiffs may be considered a prevailing party for attorney's fees purposes if they succeed on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 584 (App. Div. 2018). Even if a plaintiff fails at prevailing on all of its claims, that "does not diminish the significance of its success on most" of the claims. Id. at 586.

Under New Jersey law, to be considered a prevailing party, the Court applies a two-prong test. *See* Packard-Bamberger, 167 N.J. at 444. First, the party seeking fees must establish that the lawsuit was "causally related to securing the relief obtained." Id. Specifically, "a fee award is justified if the party's efforts are a necessary and important factor in obtaining the relief." Id. Essentially, there must be a factual nexus between the pleading and the relief ultimately recovered. Id. To determine whether this factual nexus exists, the Court is required to "conduct [a] fact-sensitive inquiry on a case-by-case basis, evaluating the reasonableness of, and motivations for, an agency's decisions, and viewing each matter on its merits." Jones v. Hayman, 418 N.J. Super. 291, 305-06 (App. Div. 2011).

The second prong involves a "factual and legal determination, requiring the party seeking fees to prove that 'the relief granted has some basis in law.'" Id. There must be a resolution of "some dispute that affected the defendant's behavior towards the prevailing plaintiff." Id. In other words, a plaintiff may be considered a prevailing party by "taking legal action that provides a

'catalyst' to induce a defendant's compliance with the law." <u>Smith v. Hudson County Register</u>, 422 N.J. Super. 387, 394 (App. Div. 2011).  Especially relevant is the "magnitude or degree of plaintiffs' success as compared to obtaining a complete and final judgment on the merits." <u>Jones</u>, 418 N.J. Super. at 308.  The Courts have also recognized that "success in obtaining preliminary injunctive relief may provide a sufficient foundation for an award of the attorney's fees . . . even though the case became moot before a final adjudication." <u>Id.</u> at 309.

In <u>People Against Police Violence v. City of Pittsburgh</u>, 520 F.3d 226, 232-33 (3d Cir. 2008), the Court agreed with "nearly every Court of Appeals to have addressed the issue" that a preliminary injunction can confer "prevailing party" status under the appropriate circumstances. Specifically, the Court held that the TRO and preliminary injunction "did not simply maintain the status quo" but instead "afford[ed] plaintiffs virtually all of the substantive relief they sought, albeit initially on an interim basis." <u>Id.</u> at 234. Thus, the Court determined the legal relationship between the parties had been altered in a manner that "afforded plaintiffs substantial relief on the merits of their claims." <u>Id.</u> The Court also determined that the plaintiffs were a "prevailing party" for the "subsequent process of litigating" the defendant's compliance with the preliminary injunction. <u>Id</u> at 235.

In the present matter, all stages of the litigation pursued thus far are causally related to securing the relief obtained, *i.e.*, securing Defendants' compliance with the restrictive covenant agreements. *See* Miller Decl., ¶¶ 17-36. It was necessary for Sandhills to file the Verified Complaint and seek a temporary restraining order and a preliminary injunction in order to protect the business it purchased from Garafola and to secure Garafola's compliance with his restrictive covenant agreements. *See* Miller Decl., ¶¶ 14, 17-27. If Sandhills had chosen not to seek this relief, Garafola would have been free to unlawfully conduct his competing business in violation of his restrictive covenant agreements, thereby damaging Sandhills and continuing to breach the

agreements he entered into for which he received $1.5 million.  Most significantly, the Court's PI Order enforced the restrictive covenants against both Defendants for the entire period of time sought by Plaintiff.  *See* Miller Decl., ¶ 26. As this Court noted, "[a]ttorneys' fees pursuant to terms of a restrictive covenant are, accordingly, appropriate where a court orders 'enforcement of restrictions on [the defendant's] employment for almost the entire the period [the plaintiff] requested.'"  PI Order and Memorandum, pp. 27-28 (Docket No. 63) (quoting Tilden Recreational Vehicles, Inc. v. Belair, 786 F. App'x 335, 344 (3d Cir. 2019) and citing Psaros v. Saropoulos, No. A-4293-07T3, 2009 WL 1393313, at *4 (N.J. Super. Ct. App. Div. May 20, 2009) (granting attorneys' fees pursuant to a provision of the parties' restrictive covenant where "plaintiff received a judgment substantially in his favor")).

Further, there is a clear factual nexus between the pleading and the relief ultimately obtained.  Plaintiff has secured substantially all of relief sought thus far.   Specifically, the TRO was granted against Garafola, pending completion of the preliminary injunction hearing. *See* Miller Decl., ¶ 19. Thereafter, the preliminary injunction was granted in full. *See* Miller Decl., ¶ 26. In fact, in its opinion granting the preliminary injunction, the Court noted that "Sandhills preliminarily achieved the substantive relief it sought." Sandhills Global, Inc. v. Lawrence Garafola, Civil Action No. 19-20669 (MAS) (TJB), Memorandum Opinion, 28.  Additionally, Plaintiff's eight out of nine claims alleged in the Verified Complaint remain intact, including the injunctive relief awarded by the Court.  *See* Miller Decl., ¶ 34. Further, at the Court's request, Plaintiff submitted substantial and credible evidence supporting its position that Defendants' newly defined business, *i.e.*, white label auction solutions, is covered and prohibited by Garafola's restrictive covenant agreements and, as such, should be included in the preliminary injunction order already entered by the Court.  *See* Miller Decl., ¶¶  28-30. As a result, the first prong of the Packard-Bamberger test has evidently been met.

In addition, it is clear that the relief granted has a basis in law. Specifically, all stages of the litigation have affected Garafola's behavior toward Sandhills. The Verified Complaint, TRO, and preliminary injunction have provided the catalyst for securing Garafola's compliance with his restrictive covenant agreements. *See* Miller Decl., ¶ 38.  Indeed, Garafola ceased operating entirely his non-white label online auction business as a direct result of Plaintiff's TRO and PI applications. While not considered a final judgement on the merits, the magnitude of this relief is great.  Most claims in the Verified Complaint were upheld against Garafola, the TRO was granted against Garafola and the PI Order was entered against Garafola and Facts Technology, based on the admissions Plaintiff was able to secure from Garafola during the evidentiary hearings. *See* Miller Decl., ¶¶ 17-27.  After receiving testimony and evidence at and after the in-person preliminary injunction hearings, the Court granted the Plaintiff's request for a preliminary injunction and Garafola and Facts Technology have ceased competing against and soliciting business and customers away from Sandhills. *See* Miller Decl., ¶¶ 22-26.  Sandhills submits that the evidence offered to the Court on the white label auction issues credibly supports its request to extent the PI Order to include Defendants' white label auction business when it finally rules on that issue. Similar to People Against Police Violence, Sandhills was awarded substantially all of the substantive relief sought through the preliminary injunction. Further akin to that case, Plaintiff has been the prevailing party for the entirety of the litigation thus far. *See* Miller Decl., ¶ 38.  Thus, it is clear that this relief has a basis in law.

After satisfying both prongs of the Packard-Bamberger test, there is no question that Sandhills is considered a prevailing party for attorneys' fees purposes.

**b. The Agreement between the parties expressly provides for attorney's fees and costs.**

A prevailing party can recover those fees "if they are expressly provided for by statute, court rule, or contract." <u>Packard-Bamberger</u>, 167 N.J. at 440. In the present matter, the parties agreed by contract to a fee-shifting provision. Specifically, the APA Restrictive Covenant Agreement between Plaintiff and Defendants includes a fee-shifting provision stating the following:

> <u>If Purchaser institutes legal action to enforce the provisions of this Agreement</u>, in addition to any and all other rights or remedies which Purchaser may obtain in any such litigation, <u>Purchaser shall also be entitled to recover from the Seller's Sole Member its reasonable attorneys' fees and out-of-pocket expenses incurred in such litigation.</u>

Section 8 (emphasis added).

Here, the contractual provision for attorneys' fees and expenses is unambiguous and enforceable. Sandhills was obligated to institute legal action to enforce the APA Restrictive Covenant Agreement. *See* Miller Decl., ¶ 37; *see also* Section 8 (emphasis added) of <u>Exhibit</u> 3 attached to Miller Decl. As a result of that legal action, this litigation ensued. Accordingly, there is no question that the contract between the parties expressly provides for Sandhills' recovery of attorneys' fees and out-of-pocket expenses. Specifically, the Court is authorized to and should award Plaintiff attorneys' fees and out-of-pocket expenses incurred in connection with the six (6) stages of the injunctive relief proceedings. *See* Miller Decl., ¶¶ 17-36. Having established that the Plaintiff is entitled to such fees and expenses, the Court must next determine the reasonableness of same.

## <u>POINT II - SANDHILLS' COUNSEL'S HOURLY RATES ARE REASONABLE.</u>

If the prevailing party is entitled to attorney's fees, courts have the discretion of determining whether such fees and costs are reasonable. *See* <u>Lieb v. Topstone Indus., Inc.</u>, 788 F.2d 151, 158

(3rd Cir. 1986). The standard to calculate reasonable attorney's fees in New Jersey is the lodestar method, namely, the multiplication of hours reasonably expended by the moving party's counsel with a reasonable hourly rate. *See* <u>Grow Co., Inc. v. Chokshi</u>, 424 N.J. Super. 357, 367-68 (App. Div. 2012); *see also* <u>Packard-Bamberger</u>, 167 N.J. at 445-46. When determining the appropriate amount to award, the Court should award fees "to the extent that the litigant was successful." <u>Empower</u>, 453 N.J. Super. at 587. Courts have held that it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested," as a plaintiff who "failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." <u>Id.</u>

Plaintiff is requesting fees and costs for litigation tasks completed by Bressler, Amery & Ross, P.C. ("Bressler") and Koley Jessen in connection with the six (6) stages of the injunctive relief proceedings, and out-of-pocket expenses incurred by Sandhills. Sandhills agreed to and did pay Bressler and Koley Jessen on an hourly basis for the services rendered based on invoices submitted to it monthly. *See* Miller Decl., ¶ 4.

Relating to Bressler, Plaintiff requests an award of attorneys' fees and costs for litigation tasks completed by John D. Miller, III, Justin Condit, and Aimee Kierney:

| NAME | POSITION | HOURLY RATE |
|---|---|---|
| John D. Miller, III | Partner (21 years of practice) | $375 |
| Justin Condit | Associate (5 years of practice) | $325 |
| Aimee Kierney | Senior Paralegal (22 years of experience) | $250 |

*See* Miller Decl., ¶¶ 1, 4(a), 5.

Relating to the Koley Jessen law firm based in Omaha, Nebraska and Sandhills' counsel in connection with the acquisition of Equipmentfacts and in this litigation, Plaintiff requests an award of attorneys' fees and costs for litigation tasks completed by:

| NAME | POSITION | HOURLY RATE |
|------|----------|-------------|
| Margaret C. Hershiser | Partner (29 years of practice) | $390 – $395 |
| Patrice D. Ott | Partner (10 years of practice) | $255 – $275 |
| Comran E. Sharif | Senior Associate (5 years of practice) | $285 |
| John D. Dunn | Associate (4 years of practice) | $230 |
| Julie A. Ward | Associate (3 years of practice) | $195 - $225 |

*See* Miller Decl., ¶¶ 4(b)-(f).

The appropriate rate to be applied is "the rate that would be charged by a competent and knowledgeable attorney engaged to render legal services in the particular case." Singer v. State, 95 N.J. 487, 499-500 (1984). These rates should be "those that would be charged by an adequately experienced attorney possessed of average skill and ordinary competence – not those that would be set by the most successful or highly specialized attorney in the context of private practice." Id.

In the present matter, there is no question that the Court should award the attorneys' fees sought by Sandhills, and that these fees and costs are reasonable. The counsel fees and expenses which Sandhills incurred and has paid in full pursuing this action against Defendants were both necessary and reasonable.  Indeed, Sandhills' attorneys' fees and costs are based in substantial part on the discounted hourly rate that Sandhills received from John D. Miller, III for this case

(discounted rated $375/hour; standard rate $445/hour). *See* Miller Decl., ¶ 1. Mr. Miller performed 501.2 hours (at the discounted rate) out of 748.7 total hours billed (or 67% of the total hours billed and paid). *See* Miller Decl., ¶ 12. Over the course of the six (6) stages of the injunction proceedings, Sandhills' incurred and fully paid attorneys' fees in the total amount of $256,791.50 and litigation costs of $7,878.31. John D. Miller, III, Esq., has attested to the reasonableness of the attorneys' fees and litigation costs which Sandhills incurred and paid in full in the prosecution of this matter. *See* Miller Decl., ¶¶ 8-13, 39-41.

It is respectfully submitted, therefore, that Sandhills should be awarded the full amount of its attorney's fees and litigation costs, as discussed in more detail below.

### a. The rates are equivalent to Sandhills' counsel's usual billing rate.

In the Third Circuit, the starting point in determining the reasonableness of a requested hourly rate is by first determining the attorneys' usual billing rates in other similar cases. Pub. Int. Research Grp. Of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). Here, Mr. Miller's rates were reduced from $445 to $375, giving Plaintiff a discounted rate from beginning to end of the litigation. *See* Miller Decl., ¶ 1. Mr. Miller has been responsible for a majority of the work performed in this matter to date. Mr. Miller performed 501.2 hours (at the discounted rate) out of 748.7 total hours billed (or 67% of the total hours billed and paid). *See* Miller Decl., ¶ 12. Given the steep cut in Mr. Miller's rates, Mr. Condit and Ms. Kierney's rates were not discounted and, as such, Plaintiff submits their rates should not be reduced. *See id.*

### b. The rates are reasonable in comparison to attorneys offering similar services.

In addition to the requested rates being reasonable in comparison to other law firm rates, they are also reasonable in comparison to (1) attorneys with similar skill and experience, (2) offering similar services, (3) in the same market, and are not those that would be set by the most

successful or highly specialized attorney in the context of private practice. *See* <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990) (holding that reasonable hourly rates may be calculated by comparing attorneys with similar backgrounds offering similar services in the same market); *see also* <u>Singer v. State</u>, 95 N.J. 487, 499-500 (1984). The moving party may submit affidavits of third-party attorneys explaining their rates in support of a motion for attorney's fees. <u>Apple Corps., Ltd. v. Intl Collectors Soc'y</u>, 25 F. Supp. 2d 480, 492 (D.N.J. 1998). The Third Circuit has not adopted a strict geographic definition of a relevant market. <u>Pub. Int. Research Grp. Of N.J., Inc.</u> 51 F.3d at 1186.

Plaintiff submits that the relevant market in this case is the District of New Jersey and sister districts with the Third Circuit. The main cause of action concerns New Jersey law, was litigated in New Jersey, against a New Jersey party, by New Jersey attorneys in substantial part. *See* <u>id.</u> at 1187. ("The district court serve[s] the entire State of New Jersey and […] it is common practice for attorneys throughout the state to appear in the district court's Trenton vicinage."). Mr. Miller's declaration supports the reasonableness of the attorneys' fees within the relevant market. *See* Miller Decl., ¶¶ 8-13.

### c. The rates are reasonable based on the USAO Attorney's Fees Matrix 2015-2020.

The hourly rates charged by Plaintiff's counsel are consistent with the United States Attorney's Office ("USAO") Attorney's Fees Matrix for 2015-2020 ("Matrix") ((https://www.justice.gov/usao-dc/page/file/1189846/download). *See* Miller Decl., ¶ 9. This data compilation was prepared by the Civil Division of the USAO and, as noted in footnote 1 of the Matrix, is intended for use in cases in which a right to recovery of attorney's fees exists in the employment context. *USAO Attorney's Fees Matrix – 2015-2020, Revised Methodology starting with 2015-2016 Year*, n. 1. The Third Circuit has determined that the Matrix, although not

dispositive, may be considered when determining what fees are reasonable. Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 709-10 (3d. Cir. 2005).  In addition, multiple circuits within the United States also rely on this Matrix. *See* Certain Underwriters at Lloyd's v. AdvanFort Co., 2019 U.S. Dist. LEXIS 176192, *12 (4th Cir. October 9, 2019) (using the Matrix as a "helpful guide" to aid in its analysis of attorneys' fees awards); *see also* Andrade v. Arby's Rest. Grp., Inc., 225 F. Supp. 3d. 1115, 1144 (9th Cir. 2016); IMS Health Corp. v. Schneider, 901 F. Supp. 2d. 172, 195-96 (1st. Cir. 2012) (finding it reasonable to "extrapolate" the District of Columbia rates through the Matrix to Maine); Pickett v. Sheridan Health Care Ctr., 664 F.3d. 632, 650-51 (7th Cir. 2011) (allowing the district courts to rely on the Matrix so long as the opposing party has reasonable opportunity to respond). Thus, this Court should consider the Matrix in the present matter when determining whether the fees are appropriate and reasonable.

For 2019-2020, the Matrix provides that the average hourly rate for an attorney such as Mr. Miller and Ms. Hershiser with 21 and 28 years of experience, respectively, is $595/hour, an attorney such as Ms. Ott with 10 years of experience is $433/hour,  an attorney such as Messrs. Condit, Dunn and Sharif with approximately 4-5 years of experience is $365/hour, an attorney such as Ms. Ward with approximately 3 years of experience is $353/hour, and a paralegal such as Ms. Kierney is $173/hour. Here, the rates for Mr. Miller, Ms. Hershiser and Ms. Ott are significantly lower than the suggested rates for attorneys with their level of experience. The rates for Messrs. Condit, Dunn and Sharif, and Ms. Ward are also lower than the suggested rates for attorneys with their level of experience. Therefore, although Ms. Kierney's rate is slightly higher than the suggested rates for a paralegal, the lower than suggested rates for all of the attorneys in this matter counter-balances the modest increase in Ms. Kierney's rate.  *See* Miller Decl., ¶¶ 9-10.

**d. The rates are reasonable based on the Community Legal Services of Philadelphia fee schedule.**

Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. <u>Rendine v. Pantzer</u>, 141 N.J. 292, 337 (1995). The Court should assess the experience and skill of the prevailing party's attorneys and "compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Id.</u>

Here, in addition to the fees being consistent with USAO Attorney's Fees Matrix, they are also generally consistent with the Community Legal Services ("CLS") of Philadelphia fee schedule, a neighboring Third Circuit jurisdiction. This list was compiled to reflect the fee schedule used by CLS in cases where the law allows for an award of attorney's fees in order to compensate CLS for legal services provided to its clients. *Attorney Fees, Community Legal Services of Philadelphia, available at* https://clsphila.org/about-community-legal-services/attorney-fees/ (hereinafter *Attorney Fees, Community Legal Services of Philadelphia*). *See* Miller Decl., ¶¶ 11. These "rates do not reflect any adjustment for contingency, and are based on Philadelphia law firm market survey data and increases in the Consumer Price Index." <u>Id.</u> The Third Circuit has found that the CLS fee schedule is a permissible method in determining a reasonable rate for attorneys' fees. *See* <u>Machado v. Law Offices of Jeffrey H. Ward,</u> Civil Action No. 14-7401 (MAS) (TJB), 2017 U.S. Dist. LEXIS 102869, at *7 (D.N.J. June 30, 2017) (citing <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 187-88 (3d Cir. 2001)).

When comparing the rates of attorneys and a paralegal from Bressler and attorneys from Koley Jessen to those of similar services in the community, they are comparable. The CLS fee schedule provides that the fee ranges for Bressler attorneys and paralegal are: Mr. Miller at $550-$640, Mr. Condit at $230-$275, and Ms. Kierney at $205-230. The fee ranges for Koley Jessen

attorneys are: Ms. Hershiser at $650-$700, Ms. Ott at $280-$360, Mr. Sharif at $230-$275, Mr. Dunn at $230-$275, and Ms. Ward at $230-$275. *Attorney Fees, Community Legal Services of Philadelphia.* The rates for the partners in this case, Mr. Miller, Ms. Hershiser and Ms. Ott, are significantly lower than the suggested CLS fees, and their billed hours represent the majority of the requested fees. The rates of the remaining Koley Jessen attorneys are at or near the suggested CLS fee ranges.  Although Mr. Condit and Ms. Kierney's fees are slightly higher than the CLS rates, Plaintiff submits that, because the rates for the partners in this case are significantly lower than the suggested CLS rates, coupled with the fact that Mr. Miller performed substantially all of the work in this litigation (501.2 hours (at a discounted rate substantially lower than the suggested CLS rate) out of 748.7 total hours billed (or 67% of the total work)), Mr. Condit's and Ms. Kierney's rates should not be reduced. Additionally, the fees referenced in the CLS chart are approximately two years old and do not account for industry standard annual increases. *See* Miller Decl., ¶¶ 11-13.

### POINT III - THE NUMBER OF HOURS EXPENDED BY SANDHILLS' COUNSEL IS REASONABLE.

### a. Tasks by respective counsel.

In connection with this Motion, pursuant to <u>L. Civ. R.</u> 5.3(c)(4), Plaintiff has submitted under temporary seal invoices detailing the specific tasks performed by attorneys and staff from Bressler and Koley Jessen for each of the six (6) stages of the injunctive relief proceedings, the dates of such tasks, and the amounts billed to and paid by Sandhills.  *See* Miller Decl., ¶ 42 (<u>Exhibits</u> 4 and 5).  These records demonstrate the need for and reasonableness of all the tasks taken by counsel for which Sandhills has paid counsel in full.  Simultaneous with this motion, Plaintiff has filed an application to seal the at-issue invoices.  Plaintiff also filed redacted copies

of the Bressler and Koley Jessen invoices with this motion that are available to the public.  *See* Miller Decl., ¶ 43 (Exhibits 7 and 8).

### b.  The hours requested are both necessary and reasonable.

In New Jersey, courts do not grant attorney's fees for "excessive and unnecessary hours spent on the case. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22 (2004). Unnecessary and excessive hours must be excluded from the court's review. *See* Hensley v. Eckerhart, 461 U.S. 424, 433-4 (1983)). However, the court may not review specific charges or make any adjustment to fees without being prompted by the opposing party. Interfaith Cmty.Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005). Here, Defendants had the opportunity to oppose Plaintiff's request for attorney's fees in the Motion for Temporary Restraining Order and Preliminary Injunction, but failed to do so. *See* Sandhills Global, Inc. v. Lawrence Garafola, Civil Action No. 19-20669 (MAS) (TJB), Memorandum Opinion, 28 ("Defendants have not, however, put forth any defense to Sandhills's request.").  Because of this, Plaintiff submits Defendants should be estopped from raising reasonableness arguments. Regardless, the requested hours were both necessary and reasonable particularly given the fact that Defendants took legally and factually unsupported positions in this case that unnecessary protracted the injunctive relief proceedings, which ultimately resulted in the Court awarding Plaintiff all the injunctive relief sought in the Verified Complaint.  Plaintiff's counsel specifically tailored the requested hours included in this Motion to accurately reflect the time spent on activities essential to each of the six (6) stages of the injunctive relief proceedings.  Unlike the instant case, this Court has held in other cases that fees may be unnecessary or excessive in the following instances:

- Time entries covering litigation against other parties. *See* Machado, 2017 U.S. Dist. LEXIS 102869 at *8-9; *see also* Rode, 892 F.2d at 1185.

- Time entries for revising court-submitted documents due to counsel's failure to follow court rules during the first submission. <u>Machado</u>, 2017 U.S. Dist. LEXIS 102869 at *10-11.
- "Miscellaneous activities." <u>Armur Realty LLC v. Banco do Brasil</u>, 2011 U.S. Dist. LEXIS 151677, *13 (D.N.J. December 12, 2011).
- More time spent to amend a complaint than draft the original. <u>Machado</u>, 2017 U.S. Dist. LEXIS 102869 at *10.
- Attendance of a conference. <u>Armur Realty LLC</u>, 2011 U.S. Dist. LEXIS 151677 at *13.
- Excessive communications within the law firm and between two law firms on the same side of litigation. <u>Id.</u> at *18-21.
- Vague time entries such as "review changes," "make changes," etc. <u>Id.</u> at *16.

Unlike the examples listed above, the time entries submitted in this Motion do not include any of the above excessive or unnecessary entries. Rather, they provide detailed descriptions of the necessary work Plaintiff's counsel spent on each of the six (6) stages of the injunctive relief proceedings the result of Plaintiff obtained the complete injunctive relief sought in the Verified Complaint.

## <u>POINT IV - THE LODESTAR CALCULATION.</u>

Pursuant to Plaintiff's counsel's reasonable hourly fees and reasonable hours spent on litigation, Plaintiff submits the Court should award it $256,791.50 in attorneys' fees and $7,878.31 in expenses and court costs, totaling $264,669.81, as more fully detailed below:

| NAME | POSITION | HOURLY RATE (HR) | HOURS SPENT (HS) | HR x HS |
|---|---|---|---|---|
| John D. Miller | Partner (21 years of practice) | $375 | 501.2 | $187,950.00 |
| Justin Condit | Senior Associate (5 years of practice) | $325 | 73.5 | $23,887.50 |

| Aimee Kierney | Senior Paralegal (22 years of experience) | $250 | 34.4 | $8,600.00 |
|---|---|---|---|---|
| Margaret C. Hershiser | Partner (28 years of practice) | $390 | 6.7 | $2,613.00 |
| Margaret C. Hershiser | Partner (28 years of practice) | $395 | 8.2 | $3,239.00 |
| Patrice D. Ott | Partner (10 years of practice) | $255 | 34.8 | $8,874.00 |
| Patrice D Ott | Partner (10 years of practice) | $275 | 37.6 | $10,340.00 |
| Comran E. Sharif | Senior Associate (5 years of practice) | $285 | 1.0 | $285.00 |
| John D. Dunn | Associate (4 years of practice) | $230 | .7 | $161.00 |
| Julie A. Ward | Associate (3 years of practice) | $195 | 18.1 | $3,529.50 |
| Julie A. Ward | Associate (3 years of practice) | $225 | 32.5 | $7,312.50 |
| | | | **TOTAL:** | **$256,791.50** |

*See* Miller Decl., ¶¶ 1, 4(a)-(f), 5, 39, 42.

Sandhills also incurred and has fully paid $7,878.31 in out-of-pocket costs and expenses in connection with Stages 1 to 6 of the litigation, including travel-related expenses incurred by Messrs. Essay and Welch attending the preliminary injunction hearings in New Jersey. *See* Miller Decl., ¶ 40.

## **CONCLUSION**

For the foregoing reasons, Sandhills respectfully requests that the Court grant the instant

Motion and enter a judgment against Lawrence Garafola in the amount of $256,791.50 in attorneys'

fees and $7,878.31 in expenses and court costs, totaling $264,669.81.


Respectfully submitted,

*s/ John D. Miller, III*
By:_____
        John D. Miller, III
        Justin E. Condit
        BRESSLER, AMERY & ROSS, P.C.
        325 Columbia Turnpike
        Florham Park, NJ 07932
        *Attorneys for Plaintiff Sandhills Global, Inc.*

DATED:  October 9, 2020